June 5, 1978

## 78-31 MEMORANDUM OPINION FOR THE DEPUTY ASSISTANT ATTORNEY GENERAL, CRIMINAL DIVISION

### Intelligence—Warrantless Electronic Surveillance—Common Carriers (18 U.S.C. §§ 2510-2520, 47 U.S.C. § 605)

This is in response to your request for our opinion regarding the legality of cooperation by common carriers in providing the Federal Government with technical assistance in connection with warrantless electronic surveillance for foreign intelligence purposes.[1] We conclude that such activities are not prohibited by § 605 of the Communications Act, 47 U.S.C. §605; nor do they violate chapter 119 or title 18, United States Code, 18 U.S.C. §§ 2510 -2520, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended.

### I. Section 605 of the Communications Act

Section 605 provides in pertinent part that:

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. . . .

---

[1] You have indicated that only limited technical assistance, not interception and disclosure *per se*, would be requested. The scope of this memorandum is limited accordingly.

This language, found in the first sentence of § 605, is designed to regulate the conduct of communications personnel. S. Rept. No. 1097, 90th Cong., 2d sess., 1968 U.S. Code Cong. & Admin. News, at 2197. The remainder of the section deals only with radio communications. The current language was adopted in 1968 as § 803 of the Omnibus Crime Control and Safe Streets Act. The provision was "not intended merely to be a reenactment of [old] section 605. . . [but was] intended as a substitute." *Id.*, at 2196.

Although the 1968 changes have in certain respects rendered pre-1968 judicial interpretations inapplicable,[2] certain interpretations may have continued vitality. Thus, in *United States* v. *Russo*, 250 F. Supp. 55, 58-59 (E.D. Pa. 1966), the court treated the first clause of § 605 as applicable under only very narrow circumstances, unlike those here at issue, indicating that the statute's language was

> . . . designed to apply to persons such as telegram or radiogram operators, who must either learn the content of the message or handle a written record of communications in the course of their employment. Clause 1 recognizes that the integrity of the communication system demands that the public be assured that employees who thus come to know the content of messages will in no way breech the trust which such knowledge imposes on them.

Also significant is the holding of the Court of Appeals for the Third Circuit, in *United States* v. *Butenko*, 494 F. (2d) 593 (*en banc*), cert. denied *sub nom.*, *Ivanov* v. *United States*, 419 U.S. 881 (1974), that in its earlier form the provision was simply not intended to reach wiretapping undertaken pursuant to Presidential order for foreign intelligence purposes. The provision of technical assistance for this limited purpose, using similar reasoning, would also seem to fall outside the current scope of § 605, particularly since an express disclaimer of such coverage appears in 18 U.S.C. § 2511(3), discussed below, which was enacted at the same time.

The language and legislative history of § 605, as amended, provide additional support for the view that the provision presents no bar to a carrier's technical assistance in connection with warrantless intelligence taps. In its present form, the section simply bars divulgence of the existence or content of wire communications. Cooperation in identifying lines or otherwise providing necessary technical information to facilitate Government taps does not involve disclosures of this sort. Moreover, the legislative history of the amended provision states that "[T]he regulation of the interception of wire and oral communications in the future is to be governed by proposed new chapter 119 of title 18, United States Code [18 U.S.C. §§ 2510-2520]." S. Rept. No. 1097, *supra*, 1968 U.S. Code Cong. & Admin. News, at 2196. Rather than assuming that Congress intended separately to regulate interceptions (in title 18) and disclosures (in § 605), the courts have indicated that Congress effectively

---

[2]Significantly, under the earlier version the restrictions contained in the second through fourth sentences of the current provision, now applicable only to radio communications, also governed communications by wire.

shifted control of electronic surveillance operations to 18 U.S.C. §§ 2510-2520. *See, United States* v. *Falcone,* 505 F. (2d) 478, 482 (3d Cir. 1974), *cert. denied,* 420 U.S. 955 (1975). *Cf., Hodge* v. *Mountain States Telegraph & Telephone Co.,* 555 F. (2d) 254, 264 (9th Cir. 1977) (Hufstedler, J., concurring) (pen registers not barred by chapter 119 of title 18 and therefore not covered by § 605).

For these reasons we believe that communication carriers who provide limited technical assistance in connection with Presidentially authorized warrantless electronic surveillance undertaken for foreign intelligence purposes will not violate § 605 of the Communications Act.

## II. 18 U.S.C. §§ 2510-2520 (Title III)

Section 2511(1) of title 18, United States Code, forbids interception of wire or oral communications, use of various devices to intercept oral communications, disclosure of the content of wire or oral communications, and use of the contents of such communications knowing that they have been obtained through illegal interception. "Intercept" is defined as "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device" 18 U.S.C. § 2510(4). Identification of particular telephone lines or provision of other technical assistance, knowing that another intends to undertake electronic surveillance, does not fall within the statutory language. Only actual interception or disclosure is forbidden, not lesser acts facilitating such consequences. The possibility that such conduct would be treated by a court as falling within the terms of the statute for the purpose of aiding or abetting or of a conspiracy charge where the electronic surveillance is not authorized pursuant to title III. *cf., White* v. *Weiss,* 535 F. (2d) 1067 (8th Cir. 1976) (private detective's participation in interception by providing equipment and instruction in its installation held basis for liability under § 2520), appears to be foreclosed by reference to the limitation on the scope of the title III prohibitions appearing in 18 U.S.C. § 2511(3).

Section 2511(3) provides:

Nothing contained in this chapter or in section 605 of the Communications Act of 1934 (48 Stat. 1143; 47 U.S.C. 605) shall limit the constitutional power of the President to take such measures as he deems necessary to protect the Nation against actual or potential attack or other hostile acts of a foreign power, to obtain foreign intelligence information deemed essential to the security of the United States, or to protect national security information against foreign intelligence activities. Nor shall anything contained in this chapter be deemed to limit the constitutional power of the President to take such measures as he deems necessary to protect the United States against the overthrow of the Government by force or other unlawful means, or against any other clear and present danger to the structure or existence of the Government. . . .

The Supreme Court, in *United States* v. *United States District Court (Keith),* 407 U.S. 297 (1972), a case involving warrantless surveillance of a domestic organization allegedly inclined to attack and subvert the existing structure of Government, interpreted this provision not as a grant of authority to conduct warrantless national security searches, but as a disclaimer of congressional intent to define Presidential powers in matters affecting national security. In this limited context, the Court held that the Fourth Amendment warrant requirement did apply; in so doing, however, it appeared to assume that title III limitations were inapplicable, for it discussed at some length the possible variations in procedural requirements that might be permissible under the Constitution. *Id.,* at 322-323. The *Keith* decision provides guidance concerning the President's constitutional power to undertake surveillance, while at the same time it construes § 2511(3) broadly to exempt from coverage under title III Presidential action with regard to both national security and foreign intelligence surveillance, at least in the absence of further action by Congress.[3] The Court's clear language supports this interpretation: ''We therefore think the conclusion inescapable that Congress only intended to make clear that the Act simply did not legislate with respect to national security surveillance.'' *Id.,* at 306.

An alternative interpretation of *Keith* was suggested in *Zweibon* v. *Mitchell,* 516, F. (2d) 594 (D.C. Cir. 1975), cert. denied, 425 U.S. 944 (1976). In an opinion joined by Judges Leventhal and Robinson, and concurred in by Judge Bazelon, Judge Wright there asserted that the requirements of title III should be deemed to apply as fully as possible where warrantless electronic surveillance at the behest of the President was not found to be constitutionally authorized; specifically where such surveillance was directed against members of a domestic organization whose activities could affect the foreign relations of the United States, but who were neither agents of nor collaborators with a foreign power.[4] At the same time, both Judge Wright and the other members of the court were careful to stress that the case did not require them to resolve the more difficult question left undecided in *Keith, see* 407 U.S. at 322, i.e., whether a warrant is constitutionally required in connection with electronic surveillance of collaborators or agents of a foreign power. Courts of appeal in three circuits have squarely held that warrants are not required under those circumstances. *United States* v. *Buck,* 548 F. (2d) 871 (9th Cir. 1977); *United States* v. *Butenko, supra; United States* v. *Brown,* 484 F. (2d) 418 (5th Cir. 1973). *See also, United States* v. *Humphrey,* Crim. No. 78-25-A (E.D. Va., March 31, 1978), memorandum opinion at 8. In light of this clear and growing authority, we do not believe that Judge Wright's analysis in *Zweibon* regarding

---

[3]In a recent decision, the U.S. District Court for the Eastern District of Pennsylvania adopted this view, holding that if it is established that surveillance is conducted for national security purposes, no right of action based on failure to comply with title III will lie, despite the conclusion that in that case there was a constitutional requirement that a warrant be procured. *See, Burkhart* v. *Saxbe,* 448 F. Supp. 588 (E.D. Pa. 1978).

[4]Judges Wilkey, MacKinnon, and McGowan rejected this interpretation of *Keith;* Judge Robb, concurring in the result but not in the relevant portion of the Wright opinion, found title III applicable on the facts presented. It is therefore far from clear that the Wright view should be seen as controlling.

the breadth of application to be given the provisions of title III will be extended to render telephone companies liable for providing technical assistance in connection with even constitutionally flawed surveillances undertaken pursuant to Presidential authorization for foreign intelligence purposes.[5]

Given our conclusion that the proscriptions of title III do not apply where, pursuant to Presidential authorization, Federal agents carry out warrantless electronic surveillance for foreign intelligence purposes, we must nevertheless inquire whether telephone companies which provide necessary technical assistance at the request of the Government are equally exempt from liability. It would seem to follow that Congress, intending to leave unimpaired the President's authority in this regard, did not seek to bar cooperation by telephone companies where needed to accomplish the permitted end. *Cf., Fowler* v. *Southern Bell Telephone & Telegraph Co.,* 343 F. (2d) 150, 156-157 (5th Cir. 1965) (recognizing a common law immunity from liability for telephone companies engaged in assisting immune State officials). This notion is strengthened by analogy to § 2511(2)(a), as amended in 1970, to provide that

> (ii) It shall not be unlawful under this chapter for an officer, employee, or agent of any common carrier to provide information, facilities, or technical assistance to an investigative or law enforcement officer who, pursuant to this chapter, is authorized to intercept a wire or oral communication.

Section 2511(2)(a) and two other contemporaneous amendments to title III[6] specifically provide for limited assistance in connection with court-authorized[7] electronic surveillance which complies with the procedural protections of title III, but do not in terms immunize carriers who provide such limited assistance

---

[5]*See Burkhart* v. *Saxbe, supra.* It should, nevertheless, be noted that the *Humphrey* decision may be viewed as raising particular questions in this regard. There, the court held that a warrant was required by virtue of the Fourth Amendment once the gathering of evidence of criminal activity, rather than the accumulation of foreign intelligence information, had become the primary purpose of Presidentially authorized electronic surveillance, but did not analyze the issue in terms of title III. We do not believe that such a recognition of the Government's obligation under the Constitution to seek a judicial warrant at this later time should affect the liability of telephone companies under title III. Section 2511(3) states that nothing in chapter 119 of title 18 (title III) is to be read as limiting the President's constitutional power to undertake foreign intelligence surveillances as necessary. Interpreting title III to render telephone companies liable for providing necessary technical assistance whenever an investigation later changes in character (without their knowledge) so that a warrant is constitutionally required would effectively deter their participation at the outset. This result is questionable since it impinges upon the carefully preserved and judicially recognized Presidential power with regard to foreign intelligence surveillances.

[6]*See* 18 U.S.C. § 2518(4) (on request of the applicant for a court order compelling a communications common carrier to furnish information, facilities, and technical assistance in connection with court-authorized interception); 18 U.S.C. § 2520 (expanding the defense of good faith reliance on court orders or on the provisions of § 2518(7) to include reliance on court order or "legislative authorization").

[7]The Supreme Court in *Keith,* as earlier discussed, found that § 2511(3) did not constitute congressional "authorization" of warrantless intelligence surveillance undertaken pursuant to Presidential order.

in connection with Presidentially authorized surveillance.[8] At the same time, however, they do demonstrate Congress' intent not to penalize under title III those who render this sort of aid in connection with electronic eavesdropping that is lawfully undertaken.[9] The decision in *Halperin* v. *Kissinger*, 424, F. Supp. 838 (D.D.C. 1974), provides some support for this view insofar as the district court there found a telephone company which had provided limited technical assistance while acting in reliance on the representations of Government officials to be without liability.[10] Based on the above reasoning and this limited authority, we therefore believe that it may properly be concluded that title III imposes no criminal or civil liability on common carriers which provide limited technical assistance pursuant to a Government request in connection with Presidentially authorized electronic surveillance for foreign intelligence purposes.

## III. Conclusion

There have been few judicial decisions considering the liability of telephone companies which provide technical assistance in the conduct of foreign intelligence surveillances. However, based on relevant statutory provisions, we believe that no liability is likely to be found under 47 U.S.C. § 605, as amended. Additionally, it is our view that liability for rendering technical assistance at least in connection with Presidentially authorized warrantless electronic surveillance of an agent or collaborator of a foreign power could not be founded on the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[8]The amendments were adopted in 1970 as part of the District of Columbia Court Reorganization Act. Their limited legislative history indicates that they were intended merely to clarify Congress' intent under title III of the 1968 Act. 115 Cong. Rec. 37192-93 (1970) (remarks by Senator McClellan). The Supreme Court has held that the amendments were primarily designed to overrule the Ninth Circuit's decision in *Application of the United States*, 427 F. (2d) 639 (1970), which had concluded that district courts lack power to compel a telephone company to assist in a wiretap conducted pursuant to title III. *United States* v. *New York Telephone Co.*, 434 U. S. 159, 177, n. 25 (1977). The use of such language to clarify Congress' intent in enacting title III does not compel the conclusion that the earlier version of the law did not permit the rendering of such assistance. *Cf.*, *ibid.*

[9]That limited technical aid was expressly sanctioned does, however. by implication, suggest that direct telephone company involvement in interception and disclosure was not at the same time approved.

[10]It is unclear which of these distinguishable grounds and statutory bases (§ 2511(2)(a), concerning technical assistance, or § 2520, concerning good faith reliance) served ultimately as the basis for the court's ruling.