**UNITED STATES of America**
v.
**Nicholas RUSSO, a/k/a "Dodge", a/k/a "Rocco Mattei".**
**Crim. No. 22154.**

United States District Court
E. D. Pennsylvania.

Feb. 8, 1966.

Drew J. T. O'Keefe, U. S. Atty., J. Shane Creamer, David E. Abrahamsen, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

Robert E. Gabriel, Philadelphia, Pa., for defendant.

CLARY, Chief Judge.

This is a preliminary motion by defendant, Nicholas Russo, to suppress two categories of evidence secured by the Federal Bureau of Investigation (hereafter "FBI"). First, the Court is asked to suppress all items seized upon the execution of duly issued search and arrest warrants. Secondly, suppression is sought of all evidence secured by FBI inspection of the records of the Bell Telephone Company.

The relevant facts are as follows: For sometime prior to February 6, 1965, the FBI had inspected records of the Bell Telephone Company regarding calls made from the Cherry Hill, New Jersey, telephone of one Pasquale Monzelli (indicted together with defendant Russo). These calls were made to various telephones in Philadelphia, one of which was in defendant Russo's name. The accounting information secured by these inspections of interstate calls included the dates, telephone numbers, and approximate duration of such calls. It has been stipulated by the parties that this information was not secured pursuant to a subpoena or other Court order. Eventually, warrants for the arrest of defendants Monzelli and Russo on grounds of federal offenses committed in connection with alleged

bookmaking activities, and a warrant for the search of defendant Monzelli's apartment were issued. These were based largely on the evidence gained by this inspection of telephone records, but also on the testimony of Special Agent Phelan concerning information from reliable informants and personal observations. At about 4 P.M. on February 6, 1965, defendants were arrested and a search of the apartment commenced. However, before the search was completed, the defendants were taken into custody. The search was completed in their absence. It is claimed by Russo that certain items not specifically described in the warrant were seized in this search in violation of his rights.

Subsequent to the date of the execution of the warrants, subpoenas were issued for the above-mentioned telephone records. The defendants were ultimately indicted for conspiracy to use interstate travel and facilities in aid of a gambling enterprise operated in violation of State law. Both defendants pleaded not guilty to the above charges and defendant Russo alone brought the present motion to suppress.

## I.

The first question raised in this motion is whether the FBI, in the execution of the search warrant, violated defendant's rights by seizing certain items not specifically described in the search warrant. The Fourth Amendment states that:

> "No Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

It is the settled rule that evidence gained by an unreasonable search and seizure must be suppressed, and that police cannot engage in a general exploratory search, even with a warrant. Go-Bart Importing Co. v. United States, 282 U. S. 344, 356, 51 S.Ct. 153, 75 L.Ed. 374 (1931); Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921).

Defendant Russo has moved to suppress all the evidence gained by the search of defendant Monzelli's apartment, on the grounds that at least some of the items were seized without being specifically described in the search warrant. It is assumed that Russo has standing to contest this search. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R. 2d 233 (1960). The warrant in question directed the agents to seize:

> "Numbers and bookmaking slips, adding machines, rice paper, flash paper, money and records relating to and used in the business of bookmaking and in accepting bets and wagers and in conducting a gambling enterprise in violation of state law."

Although it is true that a warrant must specifically describe the articles to be seized, this Court has held that less specificity is needed in a warrant to search a gambling establishment than in a search for stolen goods. United States v. Joseph, 174 F.Supp. 539, 544 (E.D.Pa. 1959), aff'd 278 F.2d 504 (3 Cir. 1960), cert. denied, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960). This is reasonable since officers planning to search a suspected gambling headquarters may be uncertain as to exactly what will be able to be confiscated as the fruits or instrumentalities of the crime. The warrant in the *Joseph* case was quite similar to the present one, and the latter is sufficiently specific not to be invalid on its face.

Defendant's brief refers to a number of items claimed to have been seized without being particularly described in the warrant (Def. 11). This includes papers and documents found in a black leather folder, a container of papers belonging to one "Joseph Sacreto", and a box containing miscellaneous papers. These are items 10, 11 and 12, respectively, on the return of the search warrant. Since the Government has stated that it does not intend to introduce these papers into evidence (Gov. 14–15), it is not necessary for the Court at this time to decide the lawfulness of their seizure.

58

Moreover, even if the above papers were illegally seized, this would only affect their admissibility, and would not invalidate the entire search. Rule 41(e) of the Federal Rules of Criminal Procedure states that anyone aggrieved by an unlawful search and seizure may move for the return of anything so obtained, and if the motion is granted *"the property* shall be restored * * * and *it* shall not be admissible * * *"* (emphasis added). See United States v. Castle, 213 F.Supp. 52, 56 (D.D.C.1962).[1] The entire search would only seem to become invalid if its general tenor was that of an exploratory search for evidence not specifically related to the search warrant—a situation not present in this case. The FBI accounted for each item or group of items that it seized. In executing the warrant, it conducted a thorough but careful search for the instrumentalities of this offense.

■■ Defendant also objects to the seizure of two wrenches and an adjustable iron pipe, items 4, 5 and 6. These were not described in the warrant. Very often warrants for the search of gambling establishments list "other paraphernalia and equipment used in gambling". This language is missing in the present document. However, although it is often stated that only articles specifically described can be seized, it has been held in this Court and others that "[i]t is permissible to seize things other than those described in the search warrant if they have a reasonable relation to the purpose of the search." United States v. Joseph, supra, page 57, 174 F.Supp at 545. See also Johnson v. United States, 110 U.S.App.D.C. 351, 293 F. 2d 539 (1961), cert. denied, 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed.2d 118 (1963); 4 Barron, Federal Practice and Procedure, § 2405 (Wright Ed.Supp.1964).

The evidence indicates that the wrenches and pipe were used to bar the door and thus to prevent detection and aid escape. They were therefore properly considered instrumentalities of the crime, and had a sufficient relation to the purpose of the search to allow their seizure and admission into evidence without being specifically described in the warrant.

■ In light of the above reasoning, the fact that the defendants were not present during much of the search is irrelevant.

II.

The second ground argued by defendant in support of his motion to suppress is that the Telephone Company data was secured in violation of clause 1 of section 605 of the Federal Communications Act, 47 U.S.C. 605 (1962), and is therefore inadmissible in a Federal Court. For the reasons given below, the Court finds no merit in this contention.

■ The purpose [2] of section 605 is to prohibit blatant public or private encroachments on the privacy of messages and the integrity of communication systems. Nardone v. United States, 302 U.S. 379, 383, 58 S.Ct. 275, 82 L.Ed. 314 (1937); United States v. Hill, 149 F. Supp. 83, 85 (S.D.N.Y.1957). The only way to secure this integrity is to insure that, as much as possible, only the person entitled to receive a communication learns of its contents. It is necessary to keep in focus this polestar of the secrecy of messages in order to understand the structure and meaning of this provision.

■ In order to protect this secrecy, section 605 prohibits persons who are in a position to divulge the content of a message from revealing even its existence. This provision contains two distinct kinds of prohibitions intended to

1. Since defendant Monzelli is not a moving party, the Court makes no ruling concerning the *return* of items 10, 11 and 12.

2. The record is sparse as to any Congressional expression of intent in passing section 605. See Nardone v. United States, 302 U.S. 379, 382, 58 S.Ct. 275,

82 L.Ed. 314 (1937); United States v. Hill, 149 F.Supp. 83, 85 (S.D.N.Y.1957). The primary purpose of the Act was to regulate all forms of communication. See Sen.Rep. 781, 73d Cong., 2nd Sess. 1; H.R. 1850, 73d Cong., 2nd Sess. 1–3 (1934).

apply to different situations. Clause 1 prohibits the unauthorized divulgence of the fact of the "existence, contents, substance, purport, effect, or meaning" of a message by anyone assisting in its transmission or reception. This restriction is designed to apply to persons such as telegram or radiogram operators, who must either learn the content of the message or handle a written record of communications in the course of their employment. Clause 1 recognizes that the integrity of the communication system demands that the public be assured that employees who thus come to know the content of messages will in no way breach the trust which such knowledge imposes on them. Clause 3, not relevant in this case, extends similar restrictions to unauthorized persons who assist in the transmission or reception of these messages. In order to further insure secrecy, clauses 2 and 4 establish a blanket prohibition of any disclosure by unauthorized persons who intercept a communication during its transmission.

The defendant argues that the Telephone Company, by producing for the FBI itemized bills listing the number and destination of defendant's calls, violated clause 1 of section 605 by making an unauthorized divulgence of the 'existence' of these calls. It is true that this clause refers to the disclosure of the existence of a communication. But to apply this language in the literal manner requested by defendant would require the Court to blind itself to the obvious purpose of section 605, and " * * * literalness is no sure touchstone of legislative purpose." International Longshoremen's and Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 243, 72 S.Ct. 235, 239, 96 L.Ed. 275 (1952). As was pointed out above, the purpose of clause 1 is to prohibit any disclosures—even of the mere existence of a communication—by persons such as telegraph operators who may also have intimate knowledge of the content of a message. However, tele-phone calls are fleeting and ephemeral things, and there is no recorded message of such communication nor need employees listen to the conversation. Therefore, the Telephone Company could have no knowledge of the substance of the messages in the present case unless someone surreptitiously intercepted the calls during their transmission. If this were the case, clauses 2 and 4 would absolutely prohibit any disclosure concerning these calls. However, the defendant admits that there was here no such interception (defendant's brief; pp. 2–3). Since there is no other way in which telephone employees can learn of the contents of calls, neither the language of clause 1 taken in its proper context nor its ultimate purpose applies to such employees. To agree with defendant that this provision prohibits telephone companies from revealing the accounting data covering interstate calls would fail to further the purpose of section 605 and might lead to absurd results. This we cannot do. United States v. Bryan, 339 U.S. 323, 338, 70 S.Ct. 724, 94 L.Ed. 884 (1950); Monarch Life Ins. Co. v. Loyal Protective Life Ins. Co., 326 F.2d 841, 845 (2 Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964).[3] Consequently, the Court holds that clause 1 of section 605 has no application to telephone company accounting employees. Therefore, the Telephone Company's disclosure of the existence of defendant's telephone listings, including private listings and accounting records relating thereto, in no way transgressed section 605 of the Federal Communications Act. The evidence thereby obtained will not be suppressed.

Because of our decision, it is unnecessary to discuss whether the demand of an FBI agent constitutes "other lawful authority" under clause 1 of section 605, or whether the subsequent issuance of a Grand Jury subpoena for these records could cure any original illegality in their disclosure.

---

3. Conceivably, should defendant's contention prevail, it might be illegal for the Telephone Company to even publish a telephone directory.

For the above reasons, defendant Russo's motion to suppress the evidence gained by FBI inspection of telephone records, and by the search of February 6, 1965, will be denied.