Argued and submitted September 30, 1981, reversed and remanded
with instructions April 5, reconsideration denied June 10,
petition for review denied July 27, 1982 (293 Or 394)

In the Matter of Gates, Michele Dee,
A Minor Child.

## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY,

*Appellant,*

*v.*

## GATES,

*Respondent.*

(No. 54,117, CA 19151)

642 P2d 1200

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Ira L. Gottlieb, Portland, argued the cause for respondent. With him on the brief was Lawrence D. Gorin, Portland.

Before Gillette, Presiding Judge, and Young, Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

## GILLETTE, P. J.

The state appeals from an order of the circuit court dismissing a juvenile delinquency petition. It argues that the court erred in holding that the petition was automatically dismissed due to a violation of the court's rules or that, alternatively, the petition was dismissed because of a failure to issue summons within 60 days after the petition was filed. We reverse.

Michele Dee Gates, a 13-year-old child, was charged on January 7, 1980, in a juvenile court petition with murdering Ruth Anne O'Neill by drowning her. On the same day, a detention hearing was held in juvenile court, and the child was ordered held in juvenile detention. On January 24, 1980, the child filed a motion to suppress certain evidence. On January 30, 1980, the state moved for a continuance on the ground that it had had insufficient time to prepare for oral hearing on the motion. The circuit court ordered the matter continued to February 7, 1980, over the child's objection.

A suppression hearing was held on February 7, 1980, and the circuit court entered an order allowing the child's motion to suppress on February 12, 1980. The state filed notice of appeal from the suppression order on February 29, 1980. On June 16, 1980, this court held, in *State ex rel Juv. Dept. v. Gates,* 46 Or App 587, 612 P2d 734 (1980), that the state had no right to appeal from the suppression order, and the appeal was dismissed. The Supreme Court denied the state's petition for review of our decision on August 12, 1980.

On August 13, 1980, the child moved for a hearing date on the petition, which was set for September 2, 1980. On August 20, 1980, the child's attorney asked to be replaced. The court replaced him. The hearing date was then reset for September 22, 1980, without objection by either party, to allow the child's new attorney time to prepare. On September 8, 1980, the circuit court began a hearing on a number of motions on the child's behalf, including a motion to suppress. After completion of testimony and arguments on the motion to suppress, the circuit court took judicial notice of the Rules of the Multnomah

County Juvenile Court, and in particular Rule 2,[1] which states that a delinquency petition expires automatically 30 days after the petition is filed unless the adjudicative hearing has begun by then, and Rule 6, which states that the time requirements imposed by Rules 1 through 5 may be extended or the Rules suspended "only if ordered by the judge." The court then raised, on its own motion, the question of the juvenile court's jurisdiction over the child.

On September 11, 1980, the court began hearing testimony on the jurisdictional question. By that time, the child had filed her own motion to dismiss for lack of jurisdiction. Two witnesses, Circuit Court Judge Mercedes Deiz and juvenile court counselor Sharon Easley, testified that a "petition for waiver of court rules" is normally used by juvenile court counselors, while attorneys use a "motion for continuance" in order to extend a case. Judge Deiz also testified that the waiver petition is an administrative document used to avoid "losing" children, usually in dependency, rather than delinquency, proceedings. In delinquency cases, she testified, the matter is "automatically" docketed for trial.

Circuit Court Judge Kathleen Nachtigal testified that on the two occasions she heard matters relating to this case, she was aware that the case had been pending for longer than 30 days, yet no party brought either that fact or the possible applicability of Rule 2 to her attention. Judge Deiz, who granted the continuance pending the motion to suppress in February, 1980, testified that she assumed the hearing would be heard on the petition once the decision was made on the motion to suppress.

The court ruled that the January 7, 1980, petition was "automatically dismissed" by operation of Rule 2 "not later than February 13, 1980." It went on to hold that, if that reason for dismissal were incorrect, the petition still expired by operation of law 60 days after the petition was filed for failure to issue summons pursuant to ORS

---

[1] Multnomah County Juvenile Court Rule 2 provides:

"A petition alleging delinquency shall be dismissed automatically at the expiration of thirty (30) days from the date the petition is filed unless the adjudicative hearing has begun prior to the expiration of the 30th day."

419.486(1).[2] A dismissal order was entered, and this appeal followed.

The state argues first that the court erred in holding that the delinquency petition was "automatically dismissed" on February 13, 1980. It reasons that Multnomah County Juvenile Court Rule 2 was effectively suspended during most of the period prior to the dismissal of the petition. The child responds that the state should have applied expressly to the court for suspension of Rule 2. Because it did not, the child argues, neither the continuance granted for the motion to suppress hearing nor events subsequent to February 13 served to suspend operation of Rule 2.

Both sides agree that court rules such as Rule 2 have the force and effect of law, so long as they are not inconsistent with statute or constitution. We are not nearly

---

[2] ORS 419.486 provides:

"(1) Promptly after the petition is filed, there shall be an investigation of the circumstances concerning the child. No later than 60 days after the petition is filed, summons may be issued.

"(2) The summons shall be signed by a counselor or some other person acting under the direction of the court and shall contain the name of the court, the title of the proceeding and, except for a published summons, a brief statement of the substance of the facts required by paragraph (b) of subsection (2) of ORS 419.484. Summons published as provided in paragraph (c) of subsection (2) of ORS 419.488 shall contain the name of the court, the title of the proceeding and the statement mentioned in that paragraph.

"(3) The summons shall require the person or persons who have physical custody of the child to appear personally and bring the child before the court at the time and place stated in the summons. The time for the hearing on the petition shall be fixed at a reasonable time, not less than 24 hours, after the issuance of the summons. If it appears to the court that the welfare of the child or of the public requires that the child immediately be taken into custody, the court may indorse an order on the summons directing the officer service it to take the child into custody.

"(4) If the child is not in the physical custody of both parents, or the child's only living parent, or, if both parents are dead, the child's guardian, then summons shall also be issued to the parent or parents or guardian, as the case may be, notifying him or them that he or they may appear personally before the court at the time and place stated in the summons, to the end that both parents or the guardian, or both, may be brought before the court.

"(5) If the child is 12 years of age or older, a certified copy of the summons shall be served upon the child.

"(6) Summons may be issued requiring the appearance of any person whose presence the court deems necessary."

as persuaded of this proposition as are the parties — *see Forte v. Page,* 172 Or 645, 653-654, 143 P2d 669 (1943). No one in this case argues that the Rule violates either. The child also points to the propositions that words in a statute are to be given their natural, plain and obvious signification, *Portland v. Meyer,* 32 Or 368, 52 P 21 (1898), and that it is improper to proceed with application of rules of statutory construction when statutes are clear by their terms. *State v. Hiller,* 22 Or App 57, 537 P2d 571 (1975). The child argues that Rule 2 is clear and unambiguous and should be applied literally.[3]

■        It is also fundamental to statutory interpretation, however, that we presume the legislature did not intend harsh results that literal application of statutory terms would cause. *Mallon v. Employment Division,* 41 Or App 479, 484, 599 P2d 1164 (1979). A literal interpretation of Rule 2 would bring about a harsh or unreasonable result in this case.

■ ■        The February 12 suppression order was not finally resolved until August 12, 1980, when the Oregon Supreme Court denied the state's petition for review of this Court's decision. A reasonable interpretation of Rule 2 must exclude the entire period from the day the motion to suppress was made, January 24, to August 12, the day the state's appeal was resolved. Rule 2's 30-day period must be tolled for the reasonable time spent by the parties in preparing for a hearing on the motion and spent by the court in reaching a decision on the motion. Any other interpretation could result in dismissal of virtually any petition where either party made a motion that could not be resolved before the 30-day period ended. It would also penalize the state for delays occasioned by the child in making motions and for the time spent by the court in resolving them. The trial court's literal interpretation of Rule 2 would not only have prevented the state from appealing the court's motion to suppress, it even

---

[3] The trial judge took such an approach in reaching his conclusion. He found that it was crucial that cognizance be given to the effect of the words "shall" and "automatically" found in the rules. He explained:

"The word 'shall' means it is mandatory rather than optional or discretionary. The word 'automatically' means self-executing, self-acting, mechanical and without necessity of an additional hearing on the question, or the entry of a formal order of dismissal."

would have foreclosed the state from choosing to adjudicate the petition *without* an appeal, because the petition was supposedly automatically dismissed one day after the court ruled on the motion to suppress.

In essence, the moment the child filed the motion to suppress, according to the trial court's interpretion of the rule, the fate of the petition was taken completely out of the state's hands. By the time the state again had an opportunity to go forward with the petition, it had been dismissed automatically. That is simply not reasonable.

The child also finds significance in the states' assumption that the automatic dismissal did not prevent it from refiling the original delinquency petition of January 7, 1980. Whether or not that assumption is correct, we do not believe the rule should be interpreted to require the state to refile a juvenile petition and start from the very beginning whenever a motion is not resolved, either in the trial court or on appeal, before the end of the 30-day period. That interpretation would result in useless, unnecessary repetition and waste of time. We conclude that the 30-day period was tolled during the time the courts were considering the suppression issue.

■     On August 12, 1980, when the appeal was finally resolved, Rule 2 was in a state of suspension pending resolution of a county worker's strike. The court found that the suspension period terminated on September 8. On that same day, the court began hearings on several motions in the case. In essence, then, the only period of time during which the operation of Rule 2 was not effectively suspended was between January 7, 1980—the day the petition was filed—and January 24, 1980—the day the motion to suppress was filed.[4] There was no violation of the 30-day limit.

■     As noted, the child argues that the state should have expressly applied to the court for suspension of Rule

---

[4] The only other period to which it was even arguably applicable was the 17-day period during which the state considered its options after the order to suppress was entered. The child does not refer to this period in her brief, possibly because all parties recognized the possibility that the state would appeal and treated the period as part of the appeal process.

2. The testimony indicated that the normal practice in Multnomah County was for attorneys to move for a continuance rather than explicitly request that the court suspend Rule 2; a "waiver of court rules" procedure is followed generally by juvenile counselors. The state followed the appropriate procedure when it filed the January 24 motion for continuance—the only time the parties were contesting a delay in the proceedings; a formal request for suspension of Rule 2 was unnecessary.

The state next argues that the juvenile court also erred in holding that it lacked jurisdiction for failure to comply with ORS 419.486, n 2, *supra.* The court raised this matter on its own motion and held that the case expired "by operation of law" because a summons had not been issued within 60 days of the filing of the petition. ORS 419.486(1) provides:

> "Promptly after the petition is filed, there shall be an investigation of the circumstances concerning the child. No later than 60 days after the petition is filed, summons may be issued."

The state points out that the child was in custody during the entire period between issuance of the petition and the court's dismissal. It points to ORS 419.492,[5] which provides, in part:

> "If the child is before the court, the court has jurisdiction to proceed with the case notwithstanding the failure to serve summons upon any person required to be served by ORS 419.486. * * *"

---

[5] ORS 419.492 provides:

"If the child is before the court, the court has jurisdiction to proceed with the case notwithstanding the failure to serve summons upon any person required to be served by ORS 419.486, except that:

"(1) No order entered pursuant to ORS 419.523 may be entered unless ORS 419.525 is complied with.

"(2) No order for support as provided in ORS 419.513 may be entered against a person unless tht person is served as provided in subsection (1) of ORS 419.488.

"(3) If it appears to the court that a parent or guardian required to be served by ORS 419.486 was not served as provided in ORS 419.488, or was served on such short notice that he did not have a reasonable opportunity to appear at the time fixed, the court shall, upon petition by the parent or guardian, reopen the case for full consideration."

The state concludes from this provision that service was unnecesssary.

■       While we may agree with the state as to its construction of ORS 419.492, we need not go so far. Here, the juvenile did not, either at her first appearance with counsel or at a later time, raise the question of the absence of a summons. If "waiver" has any meaning at all, it has meaning here.

We hold that the juvenile court erred in ruling that the petition was automatically dismissed for violation of Rule 2 and in ruling, in the alternative, that the petition was dismissed for failure to issue summons within 60 days of the filing of the petition.

Reversed and remanded with instructions to reinstate the petition.