Argued and submitted February 22, reversed and remanded for a new trial
July 19, 1989, reconsideration denied January 5, petition for review pending 1990

STATE OF OREGON,
*Respondent,*

*v.*

PAUL KENNETH KNOBEL,
*Appellant.*

(86-454-M; CA A43491)

777 P2d 985

Marc Kardell, Grants Pass, argued the cause and filed the brief for appellant.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals his conviction for unlawfully obtaining contents of communications. ORS 165.540(1)(c). He argues that the statute is unconstitutional under both the Oregon and United States Constitutions and that the trial court erred in denying his motion for a judgment of acquittal and in failing to admit evidence of the victim's bias. We reverse and remand.

In July, 1986, defendant, a reporter for a local newspaper, *Freedom to Express,* interviewed Deputy Graves of the Josephine County Sheriff's office. Graves testified at trial that, approximately five minutes after their conversation began, he noticed a shiny metal object protruding about an eighth of an inch out of defendant's shirt pocket. He testified that he asked defendant if the object was a recorder and whether it was on. Defendant allegedly reached into his shirt pocket and partially removed the recorder and stated, "It better be on." Graves testified that he then asked defendant if he knew that it was illegal to tape record a conversation without permission and that defendant said, "Yes," but indicated that in some cases he had to do that. Graves also testified that he then heard a click, which he believed was the sound of the recorder being turned off. The conversation continued for another 10 to 15 minutes. Graves never asked for the tape or the tape recorder and never saw a tape cassette in the recorder. Defendant was charged with unlawfully and knowingly obtaining and attempting to obtain a conversation by use of a tape recorder, ORS 165.540(1)(c), and was convicted.

ORS 165.540(1)(c) provides:

> "[N]o person shall * * * [o]btain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if all participants in the conversation are not specifically informed that their conversation is being obtained."

Defendant argues that the statute is unconstitutionally overbroad and vague, in violation of Article I, section 8, and the First Amendment.

1. We examine defendant's state constitutional claims first. *State v. Kennedy,* 295 Or 260, 262-65, 666 P2d 1316

(1983). He argues that the statute is overbroad on its face. Generally, a statute is "overbroad" when its terms purport to reach conduct protected by the constitution. *State v. Robertson,* 293 Or 402, 410, 649 P2d 569 (1982). Defendant contends that the statute reaches conduct protected by Article I, section 8, namely, the right to speak and write freely on any subject whatsoever. *See State v. Robertson, supra,* 293 Or at 410.

Defendant argues that ORS 165.540(1)(c) is overbroad with respect to Article I, section 8, in two specific ways. First, he contends that the statute prevents the free exercise of his Article I, section 8, rights, because it forbids transcribing notes taken during a conversation, unless consent is given. However, the statute does not prevent that. In order to violate the statute, a person must (1) "obtain or attempt to obtain the whole or any part of a conversation," (2) by means of any device, contrivance, machine or apparatus when (3) "all participants in the conversation are not specifically informed that their conversation is being obtained." Moreover, ORS 165.540(6) provides:

> "The prohibition in paragraph (c) of subsection (1) of this section shall not apply to persons who intercept or attempt to intercept with an unconcealed recording device the oral communications that are part of any of the following proceedings:
>
> "(a)   Public or semipublic meetings such as hearings before governmental or quasi-governmental bodies, trials, press conferences, public speeches, rallys and sporting or other events;
>
> "(b)   Regularly scheduled classes or similar educational activities in public or private institutions; or
>
> "(c)   Private meetings or conferences if all others involved knew or reasonably should have known that the recording was being made."

We conclude that the statute does not prohibit taking or transcribing notes of a conversation. A reading of the entire statute and its legislative history reveals that its primary purpose is the prohibition of various forms of electronic surveillance. *See State v. Lissy,* 304 Or 455, 747 P2d 345 (1987). Consistent with that purpose, we read ORS 165.540(1)(c) to prohibit only the use of a device, contrivance, machine or apparatus to intercept a conversation in any form. Because, by

transcribing or taking notes of a conversation a person does not actually "intercept" the conversation by means of the device, contrivance, machine or apparatus, but rather first hears it by means of his auditory senses, transcription or note taking is not prohibited. Only when the device, contrivance, machine or apparatus itself intercepts the conversation does ORS 165.540(1)(c) apply.[1]

**2.** The second part of defendant's overbreadth analysis is that the statute interferes with his right to gather news or his "freedom of the press." However, prohibiting *surreptitious* tape recording of a conversation does not restrict defendant's right to communicate with individuals or to gather news. The statute does not intrude on the press' ability to contact and communicate with anyone it chooses. Subsection (6) specifically allows recording of a conversation with an unconcealed recording device at public and at private meetings, when everyone involved knows, or reasonably should know, that a recording is being made.[2] We conclude that ORS 165.540(1)(c) is not unconstitutionally overbroad.

**3.** Defendant next argues that ORS 165.540(1)(c) is unconstitutionally vague. Vagueness involves a statute's lack of clarity and failure to communicate its coverage. *State v. Robertson, supra,* 293 Or at 410; *State v. Blocker,* 291 Or 255, 261, 630 P2d 824 (1981). A statute must define an offense in such terms that a person can determine the specific conduct that will fall within its reach to a reasonable degree of certainty. *State v. Cornell/Pinnel,* 304 Or 27, 29, 741 P2d 1501 (1987); *State v. Pyritz,* 90 Or App 601, 605, 752 P2d 1310 (1988). The language that defendant asserts is unconstitutionally vague is "any device, contrivance, machine, or apparatus, whether electrical, mechanical, manual, or otherwise." He argues that "apparatus" and "manual or otherwise" could

---

[1] Defendant also contends that the statute is vague as to whether it requires a reasonable expectation of privacy in a conversation before a surreptitious interception is prohibited. However, ORS 165.540(1)(c) includes no language indicating that a reasonable expectation of privacy is required.

[2] Defendant also asserts that applying ORS 165.540(1)(c) to a reporter engaged in an on-the-record conversation with a public official is contrary to legislative intent. Although defendant frames his argument as an overbreadth issue, it actually involves a question of statutory interpretation. *State v. Robertson, supra,* 293 Or at 410. There is nothing in the language of the statute that suggests a different application of the statute when the press or public officials are involved.

be interpreted to include a pencil or pen and, consequently, the statute gives a judge or jury discretion to decide what constitutes criminal conduct.

**4.** We conclude that the statute is not unconstitutionally vague. In interpreting a statute which is arguably vague, it is our obligation to give it the required definiteness if that "can be done without departing too far from what the legislature sought to accomplish or what the statute itself can convey to a reader." *State v. Robertson, supra,* 293 Or at 411. As discussed above, we interpret ORS 165.540 not to prohibit transcription, whether by pen, pencil or otherwise, because a person who transcribes does not actually intercept the conversation by means of the device.

**5.** Because defendant's state law challenge fails, we must consider his federal claims. He again argues that ORS 165.450(1)(c) is unconstitutionally overbroad, because it interferes with freedom of the press by restricting his ability to record a conversation, in violation of the First Amendment. The First Amendment does afford protection to the press' need to gather news. *Richmond Newspapers, Inc. v. Virginia,* 448 US 555, 576, 100 S Ct 2814 65 L Ed 2d 973 (1980). However, as stated in *Branzburg v. Hayes,* 408 US 665, 682-83, 92 S Ct 2646, 33 L Ed 2d (1972):

> "It is clear that the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability."

We hold that ORS 165.540(1)(c) does not place an impermissible burden on the press. As previously discussed, it does not restrict defendant's right to communicate with individuals or to gather news.

We reject defendant's remaining First Amendment overbreadth arguments for reasons previously addressed in our discussion under the state constitution. *See State v. Pyritz, supra,* 90 Or App at 607. Additionally, we hold that defendant's claims that the statute is unconstitutionally vague under federal standards also fail. Although the federal and Oregon standards for vagueness are phrased slightly differently, they coincide for present purposes. *State v. Pyritz, supra,* 90 Or App at 606. We reject defendant's void-for-vagueness argument under the federal constitution for the

same reasons that we rejected it under the Oregon constitution.

**6.** Defendant next argues that ORS 165.540(1)(c) violates his right to "privacy" under the Fourteenth Amendment by prohibiting the recording of one's own words. However, the statute does not forbid the recording of one's own words.[3]

**7.** Defendant also argues that the trial court erred in failing to grant his motion for judgment of acquittal. ORS 165.540(6)(c) provides a "defense" to a criminal charge as opposed to an "affirmative defense." Consequently, if the defense is raised, it must be disproved by the state beyond a reasonable doubt. Defendant argues that the state failed to disprove beyond a reasonable doubt that the recorder was not concealed. Graves testified that only an eighth of an inch of the recorder was visible from the top of defendant's pocket and that he did not notice it until five minutes after the conversation began. Defendant did not offer any evidence to contradict that testimony. We hold that a rational trier of fact could have found beyond a reasonable doubt that the recorder was concealed.

**8.** Defendant also argues that the court should have granted his motion for a judgment of acquittal, because he was indicted for "obtaining *and* attempting to obtain a conversation" and there was no evidence, other than his own statement, to support a finding that he obtained Graves' statement. Defendant argues that, pursuant to ORS 136.425(1),[4] that "confession" alone is insufficient to support a conviction. It is unnecessary to decide if there is sufficient evidence to support a conviction for "obtaining" a conversation, because he was indicted for, and the jury was instructed that, it is unlawful to "obtain" *or* "attempt to obtain" a conversation. There was sufficient evidence other than defendant's statement to establish that he "attempted to obtain" Graves' conversation and,

---

[3] Defendant also argues that ORS 165.540(1)(c) *may* also violate privacy rights which *may* exist under Article I, sections 8 and 9, of the Oregon Constitution and the Fourth Amendment. However, he does not explain how those rights are violated by the statute, and we do not address the arguments.

[4] ORS 136.425(1) provides, in pertinent part:

"nor is a confession only sufficient to warrant the conviction of defendant without some other proof that the crime has been committed."

thus, the court did not err in failing to direct a verdict for defendant.

**9, 10.** Defendant next argues' that the trial court erred in limiting his cross-examination of Graves and excluding evidence of bias. He also argues that the court erred in not allowing him to ask questions during *voir dire* regarding the potential bias of jurors. Specifically, defendant sought to cross-examine Graves regarding his awareness that defendant had written derogatory articles about Sheriff Carlton, that Carlton had lost his bid for re-election, that Carlton disliked defendant and that Carlton thought that it was a good idea to press charges against him. Defendant had also sought to determine whether any members of the jury were aware of those articles or the facts behind them. The trial court held that the answers that defendant sought to elicit on cross-examination and during *voir dire* were not relevant and prohibited the inquiries. Defendant contends that he was entitled to attempt to show bias.[5] We hold that the trial court erred because the inquiries were relevant to Graves'. credibility as a witness and, as such, should have been allowed.[6]

The trial court excluded the evidence of bias on the ground that it was not relevant. In order to be relevant, however, "evidence introduced to impeach a witness for bias or interest need only have a mere tendency to show the bias or interest of the witness." *State v. Hubbard,* 297 Or 789, 796, 688 P2d 1311 (1984). In view of Graves' employe-employer relationship with Carlton, the evidence that defendant sought to elicit was relevant. If defendant had been allowed to establish bias, Graves' testimony that he did not know that defendant

---

[5] In the trial court, defendant argued that OEC 609-1 is authority to admit the evidence. It provides, in pertinent part:

"(1) The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest."

However, OEC 609-1 is not applicable here, because it does not govern showing bias or interest by evidence other than the conduct or the statements of a witness. A witness may be impeached for bias by other types of evidence. OEC 609-1 was not meant to restrict other forms of impeachment for bias. *State v. Brown,* 299 Or 143, 150, 699 P2d 1122 (1985). We hold that defendant's arguments regarding bias are sufficient to raise the more general form of impeachment for bias.

[6] In oral argument, the state argued that the defendant did not argue this theory to the trial court and, therefore, can not argue it now on appeal. We have reviewed the record and conclude that the theory was sufficiently raised below for us to address it on appeal.

was recording the conversation might have been impeached, as might his testimony that defendant admitted to knowing that the recorder was on. In the latter event, an element of the crime could have been negated; in the former, a defense could have been left intact. Although a trial court may limit the extent to which the bias of a witness may be examined on cross-examination, "the cross-examiner must be given the opportunity to establish sufficient facts from which the bias or interest may be inferred * * *." *State v. Hubbard, supra.* By prohibiting defendant's inquiry on cross-examination regarding Graves' alleged bias and thereby denying the jury an adequate opportunity to assess Graves' credibility, the trial court committed reversible error. *State v. Hubbard, supra.*[7]

Reversed and remanded for a new trial.[8]

.

---

[7] Whether the issues proper on cross-examination would be proper in *voir dire* depends on the context in which they arise on remand. We need not decide that issue at this time.

[8] Defendant also assigns error to the trial court's instruction of the jury. That assignment of error is without merit.