Submitted on record and briefs February 21, resubmitted In Banc December 6, 1989, reversed on conviction for tape recording police radio communication; otherwise affirmed April 18, 1990

# STATE OF OREGON,
*Respondent,*

*v.*

# RUTH JEAN BICHSEL,
*Appellant.*

## (B70 854; CA A47766)

790 P2d 1142

Charles O. Porter, Eugene, filed the briefs for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Christine Chute, Assistant Attorney General, Salem, filed the brief for respondent.

## ROSSMAN, J.

Defendant appeals her convictions for tape recording a police radio broadcast without the consent of one of the participants, ORS 165.540(1)(a),[1] and for tape recording a conversation with police officers without specifically informing them. ORS 165.540(1)(c). We reverse the conviction for recording the broadcast but affirm the conviction for recording the face-to-face conversation.

Defendant had had unpleasant interactions with the police as a result of her attempts to help and counsel young people at the Eugene Mall, many of whom had records of delinquency. At about 2 a.m. on August 1, 1987, Officer Shadwick and at least one other officer stopped defendant and a juvenile in an alley in downtown Eugene. Defendant carried a police scanner and a tape recorder with which she had been taping police broadcasts. During the ensuing encounter with Shadwick, the recorder continued to run, recording the conversation. When Shadwick discovered the recorder, he arrested defendant for unlawfully obtaining contents of communications.

With respect to defendant's conviction under ORS 165.540(1)(a), that section provides:

"Except as otherwise provided in ORS 133.724 or subsections (2) to (6) of this section, no person shall:

"(a) Obtain or attempt to obtain the whole or any part of a telecommunication or a radio communication to which such person is not a participant, by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, unless consent is given by at least one participant."

ORS 165.540(4), however, provides:

"The prohibitions in paragraph (a) of subsection (1) of this section do not apply to the receiving or obtaining of the contents of any radio or television broadcast transmitted *for the use of the general public.*" (Emphasis supplied.)

Defendant assigns as error that the court held that the police

---

[1] In 1989, the legislature amended ORS 165.540 by, *inter alia,* adding the exception discussed at n 2. The statutory provisions that we discuss were changed only in numbering, and we quote them as they read at the date of defendant's conviction.

broadcast that she heard over the scanner, although accessible to the public, was not transmitted "for the use of the general public."

■ No Oregon statute or case construes the phrase "for the use of the general public." That language, however, is in the Communications Act of 1934 at 47 USC § 605. That section exempts transmissions, including radio signals, "for the use of the general public" from its prohibitions on intercepting and divulging radio communications. We read the federal cases to mean that the phrase refers to an electronic transmission in which the sender has no property or privacy interest, which he sends unscrambled and to which the public has free and ready access. *See National Subscription Television v. S & H TV,* 644 F2d 820 (9th Cir 1981); *Chartwell Communications Group v. Westbrook,* 637 F2d 459 (6th Cir 1980); *Bubis v. United States,* 384 F2d 643 (9th Cir 1967); *Hoosier Home Theater, Inc. v. Adkins,* 595 F Supp 389 (SD Ind 1984); *United States v. Russo,* 250 F Supp 55 (ED Pa 1966). In the absence of Oregon authority on the question, we give the same meaning to the phrase in ORS 165.540(4).[2]

■ We note that, under *State v. Knobel,* 97 Or App 559, 777 P2d 985 (1989), *rev den* 309 Or 522 (1990), the word "obtain" in ORS 165.540(1)(c) means to intercept a communication by means of a device. Presumably, "obtain" has the same meaning in ORS 165.540(1)(a). Because the scanner is a "device," it would be a crime to use it merely to listen to a broadcast that is readily accessible and free to the public, even without tape recording the broadcast, unless the exception in ORS 165.540(4) prevents such an unreasonable result, which it does.

We hold that the trial court erred in its conclusion that the broadcast was not "for the use of the general public."

---

[2] In 1989, the legislature enacted ORS 165.540(8), which provides:

"The prohibitions in paragraphs (a), (c), (d) and (e) of subsection (1) of this section do not apply to any:

"(a) Radio communication which is transmitted by a station operating on an authorized frequency within the amateur or citizens bands; or

"(b) Person who intercepts a radio communication which is transmitted by any governmental, law enforcement, civil defense or public safety communications system, including police and fire, readily accessible to the general public provided that the interception is not for purposes of illegal activity."

The police had no property or privacy interest in it. It is undisputed that it was transmitted on a frequency that was accessible to the public, who could listen without subscription, payment or other hindrance. The scanner that defendant used to receive the message was for sale at K-Mart and Radio Shack stores. Although the police intended that the broadcast be for police use, the message was not coded or scrambled, and the police knew that the public could listen to it. The public could understand the content of the message without the use of special equipment, even though police officers were identified by number rather than by name. The broadcast was "for the use of the general public" within the meaning of the exception in ORS 165.540(4). Defendant committed no crime when she tape recorded the police radio broadcast.

■■  With respect to defendant's conviction under ORS 165.540(1)(c), that section provides:

> "[N]o person shall * * * [o]btain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if all participants in the conversation are not specifically informed that their conversation is being obtained."

ORS 165.540(6) contains these exceptions:

> "The prohibition in paragraph (c) of subsection (1) of this section shall not apply to persons who intercept or attempt to intercept with an unconcealed recording device the oral communications that are part of any of the following proceedings:
>
> "(a)  Public or semipublic meetings such as hearings before governmental or quasi-governmental bodies, trials, press conferences, public speeches, rallys [sic] and sporting or other events;
>
> "* * * * *
>
> "(c)  Private meetings or conferences if all others involved knew or reasonably should have known that the recording was being made."[3]

Defendant first argues that there was no evidence

---

[3] Contrary to defendant's assertion, mere encounters are not "meetings" within the meaning of ORS 165.540(7)(a), *formerly* ORS 165.540(6)(a). Defendant's argument that her taping of the confrontation with police was exempt either as a "public or semipublic meeting," or as a "private meeting or conference," ORS 165.540(7)(c), *formerly* ORS 165.540(6)(c), is without merit.

from which the trial court could find that she did not specifically inform Shadwick that she was recording the conversation. According to her, the tape recorder was in plain sight. Moreover, before the confrontation, fellow officers had told Shadwick that defendant was carrying a recorder. She argues that, because the circumstances show that Shadwick had reason to know that his conversation was being taped, he should be considered "specifically informed" under the statute.

The clear language of the statute requires otherwise. In some circumstances, the legislature has permitted recordings to be made "if all others * * * reasonably should have known that the recording was being made." *See* ORS 165.540(7)(c), *formerly* ORS 165.540(6)(c). Rather than using such language in ORS 165.540(1)(c), however, it has required that persons being recorded be "specifically informed." The legislature clearly intended to require persons recording the conversations of others to give an unequivocal warning to that effect. Because defendant did not notify Shadwick that she was recording his conversation, she violated the statute. *See State v. Knobel, supra.*

■ Defendant also contends that the trial court erred in finding that she "knowingly" taped Shadwick's words. According to defendant, she intended to record only police broadcasts on her scanner. She contends that, surprised by a sudden confrontation with the police, she left the recorder running and accidentally taped the conversation.

The trial court reasoned that defendant must have known that she was recording the conversation, because she had turned the recorder on to record the police broadcasts. It also found that she was not surprised by the appearance of the officers, because she had been monitoring their activities with her scanner. It inferred that, because defendant started the recorder and left it running, she knew that she was taping her conversation with the officers. The evidence was sufficient to support that inference.

The dissent argues that "the undisputed facts show the absurdity of applying the words of the statute to defendant." 101 Or App at 266. There are two problems with that position. First, we see nothing in the record to indicate that the argument on which the dissent relies was raised either below at the trial level or here on appeal. Accordingly, we

should not consider it. *State v. Stroup,* 290 Or 185, 204, 620 P2d 1359 (1980). Second, even if we were to decide that the dissent's proposed holding is so broad that nearly any argument would preserve it, it provides no basis upon which to exonerate defendant. The dissent's explanation for how it reaches its conclusion is obscure, permitting any number of unfortunate interpretations of the statute.[4] Although it suggests that it would be absurd to apply the plain meaning of the statute, it fails to explain why. In the absence of any valid constitutional challenge,[5] our only alternative is to accept the legislature's clear pronouncement that persons being recorded must be given an unequivocal warning.

Reversed on conviction for tape recording police radio communication; otherwise affirmed.

---

[4] According to the dissent:

"[B]efore the officers arrived, defendant had been recording the police broadcast for some time, the officers knew that defendant was using a scanner, and Shadwick knew that defendant was carrying a tape recorder. While defendant was recording the police broadcast, the officers arrived uninvited and the tape recorder recorded the ensuing interrogation." 101 Or App at 264.

"* * * * *

"It is absurd to state that, in her situation, defendant was obliged specifically to inform the officers that she was tape recording the conversation. When the police stopped her and her companions, she was already recording what she heard on the scanner and, as the trial court found, that is why she had her recorder on 'in the first place.' She was not obliged to turn off the recorder or inform the officers that she was tape recording the *broadcast.*" (Emphasis in original.) 101 Or App at 266.

What that language means is a matter of conjecture. The dissent may mean that defendant did not tape the conversation knowingly. If so, it has ignored the specific findings of the trial court. It could mean that the statute does not apply to defendant, because she was legally recording something else. If so, one could escape criminal liability simply by turning on the radio before taping a conversation. It also may mean that ORS 165.540(1)(c) does not forbid recording uninitiated conversations. However, the statute contains no such exception. Finally, it might mean that defendant would have turned the recorder off, had she had opportunity to do so. Again, however, that would contravene the trial court's findings. Simply put, the dissent has not lucidly articulated any reason for holding that defendant did not violate ORS 165.540(1)(c) that does not either disregard the trial court's specific findings of fact or carve unwarranted exceptions from the express coverage of the statute.

[5] Defendant has argued that the term "obtain" renders both ORS 165.540(1)(a) and ORS 165.540(1)(c) unconstitutionally vague. She concedes, however, that construing the statute "to prohibit only the use of a device, contrivance, machine or apparatus to *intercept* a conversation in any form" eliminates any such vagueness problem. *See State v. Knobel, supra,* 97 Or App at 562. (Emphasis supplied.) There is no merit in her contention that "participants" is unconstitutionally vague. She specifically withdrew her contention that ORS 165.540(1)(c) is unconstitutionally overbroad.

**BUTTLER, P. J.,** dissenting in part; concurring in part.

Because I do not agree that the police radio communications were "transmitted for the use of the general public," I would affirm defendant's conviction for "obtaining" those communications by recording them. *Former* ORS 165.540(1)(a). That we may believe the statutory prohibition to be silly, because those communications are *available* to one who has a scanner or other radio receiver designed to pick up the police radio frequencies, does not mean that the police *transmit* their communications for the *use* of the general public. The majority makes that transition with no apparent difficulty; I cannot. The statutory scheme is intended to protect the privacy interest of the people guaranteed by Article I, section 9, *see State v. Campbell,* 306 Or 157, 759 P2d 1040 (1988), including the privacy rights of the police. It is not the function of judges to select which privacy interest the courts will protect.

The trial court, after listening to the tape recording of the radio communications, found, as a fact, that those communications were not transmitted for use of the general public. Aside from the plain meaning of the statute, we are bound by the trial court's finding that is supported by the evidence. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

I concur in the conclusion that defendant violated *former* ORS 165.540(1)(c).

**NEWMAN, J.,** concurring in part, dissenting in part.

I join the majority in reversing defendant's conviction under ORS 165.540(1)(a) for tape recording a police radio broadcast without the consent of at least one of the participants. I dissent, however, from the majority's affirmance of defendant's conviction under ORS 165.540(1)(c).

The majority asserts that defendant violated ORS 165.540(1)(c) because she tape recorded Officer Shadwick and the other police officer's conversations with her and her companions without specifically informing the police that she was doing so. It is important to understand what took place here, factually. As the majority acknowledges, before the officers arrived, defendant had been recording the police broadcast for

some time, the officers knew that defendant was using a scanner, and Shadwick knew that defendant was carrying a tape recorder. While defendant was recording the police broadcast, the officers arrived uninvited and the tape recorder recorded the ensuing interrogation. The trial court found that

> "[defendant] had [the tape recorder] on believing that she was entitled to record the police conversation that she heard on the scanner *and that is the reason she had the recording device on in the first place.*" (Emphasis supplied.)

On arrival, the police initiated the conversation by commanding defendant and her companions, "Hang on right there *all* of you" (emphasis supplied) and immediately began to interrogate them while defendant's scanner was on and she was recording the radio broadcast.[1] Shortly after the inter-

---

[1] The transcript of the taped conversation from the time that the police stopped defendant and her companions reads:

"[Officer ?]:  Hang on right there all of you. [Unintelligible.] Had your Birthday yet Tom?

"Tom:  No. [Unintelligible conversation.]

"[Officer ?]:  Put your hands behind your back, put your hands behind your back now.

"Tom:  I put 'em behind my back. [Unintelligible conversation.]

"Shadwick:  How are you doing there Shelly, Ruth, whatever you're called these days. [Unintelligible.]

"Bichsel:  What do you see * * *.

"[Officer ?]:  What do you have in your hand, what is this?

"Bichsel:  A tape recorder.

"[Officer ?]:  Are you taping this right now?

"Bichsel:  [No response.]

"[Officer ?]:  Well are you? Are you taping this right now?

"Bichsel:  [Either uh-huh or un-un.]

"[Officer ?]:  Ok turn around, put your hands behind your back.

"Bichsel:  Why, what for?

"[Officer ?]:  You cannot tape a conversation, it's against the law.

"Bichsel:  Who said?

"[Officer ?]:  I do, let go of it.

"Bichsel:  It's not a tape, it's not admissible as evidence without a statement you know.

"[Unintelligible conversation.]"

rogation commenced, the police asked defendant about her tape recorder.

It is absurd to state that, in her situation, defendant was obliged specificially to inform the officers that she was tape recording the conversation. When the police stopped her and her companions, she was already recording what she heard on the scanner and, as the trial court found, that is why she had her recorder on "in the first place." She was not obliged to turn off the recorder or inform the officers that she was tape recording the *broadcast*. It makes no sense to suggest that when the officers commanded, "Hang on there," defendant was required to interrupt and say, "Excuse me, officers, but I must inform you that I am tape recording this conversation."

Nothing in the legislative history of ORS 165.540(1)(c) indicates that the legislature intended that a person in the position that the police suddenly put defendant must immediately inform the police that her tape recorder is recording the conversation. So to apply the literal words of ORS 165.540(1)(c) produces a harsh and unreasonable result that cannot further the legislative purpose of protecting the privacy of the people from improper surveillance.[2] In *Johnson v. Star Machinery Co.,* 270 Or 694, 704, 530 P2d 53 (1974), the court said:

> "When [the plain] meaning [of a statute] has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words." *Quoting US v. Amer. Trucking Ass'ns.,* 310 US 534, 542, 60 S Ct 1059, 84 L Ed 1345 (1940).

*See also State ex rel Cox v. Wilson,* 277 Or 747, 750, 562 P2d 172 (1977); *State ex rel Juv. Dept. v. Gates,* 56 Or App 694, 699, 642 P2d 1200 (1982).

Although the undisputed facts show the absurdity of applying the words of the statute to defendant, the majority

---

[2] Nothing in *State v. Knobel,* 97 Or App 555, 777 P2d 985 (1989), compels a different result.

responds that she did not at any time raise that *argument,* 101 Or App at 262, and, therefore, it should not be considered. Defendant did raise the *issue,* both below and here. In her sixth assignment of error, she asserts that she can not be prosecuted under ORS 165.540(1)(c) because the statute does not apply to her, although her particular *argument* is that she is exempt under ORS 165.540(7)(a) and (c), *formerly* ORS 165.540(6)(a) and (c). In *State v. Hitz,* 307 Or 183, 188, 766 P2d 373 (1988), the Supreme Court emphasized the distinctions

> "between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument.* * * * The first ordinarily is essential, the second less so, the third least."

This court may and should consider the issue *and* the argument that I discuss here. I would reverse defendant's conviction under ORS 165.540(1)(c).

Joseph, C. J., and Riggs, J., join in this opinion.