Argued and submitted November 7, 1994, reversed and remanded March 22, all petitions for review allowed July 18, 1995 (321 Or 396)

STATE OF OREGON,
*Appellant,*

*v.*

PHILLIP MARK CARSTON,
*Respondent.*

(93-CR-0259-TM; CA A82360 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

CHERYL LYNN SAGE,
*Respondent.*

(93-CR-0260-TM; CA A82363)

STATE OF OREGON,
*Appellant,*

*v.*

ARLEN JOSEPH SAGE,
*Respondent.*

(93-CR-0261-TM; CA A82364)

STATE OF OREGON,
*Appellant,*

*v.*

EDWARD GRALLA,
*Respondent.*

(93-CR-0229-ST; CA A82626)

891 P2d 1366

Kaye E. Sunderland argued the cause for appellant in each case. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

David A. Hill argued the cause and filed the brief for respondent Phillip Mark Carston.

Ronald L. Brown waived oral argument and filed the brief for respondents Cheryl Lynn Sage and Arlen Joseph Sage.

Eric R. Johansen argued the cause for respondent Edward Gralla. With him on the brief was Sally L. Avera, Public Defender.

Before Riggs, Presiding Judge,* and De Muniz and Leeson, Judges.

De MUNIZ, J.

---

* Riggs, P. J., *vice* Rossman, P. J., retired.

## De MUNIZ, J.

Defendants were charged with various counts of manufacture and delivery of controlled substances. ORS 475.992. The state appeals the pretrial orders granting defendants' motions to suppress evidence. We reverse and remand.

On March 19, 1993, Officer Koertje of the Redmond Police Department received a telephone call from a private citizen in Eugene who wanted to report a drug transaction that was to take place during the early morning hours of March 20. The informant did not at first identify himself, but later called again and gave the police a name and telephone number. The informant reported that he had tuned his scanner to the frequency of 46.730 and overheard a cordless telephone conversation. From the conversation, the informant had the impression that a drug buyer and seller were being introduced to each other over the phone, because one party told the other that the "stuff" cost a little bit more, but it was "really good stuff," and the buyer stated that he wanted to purchase an amount totalling $300.

The informant learned that the buyer, whose name was either "Phil" or "Bill," would come to Redmond from Eugene in his girlfriend's four-door Suzuki, arriving about 2:00 a.m. He would go to the home of the seller, "Ed," on S.W. Indian Avenue in Redmond. The house could be identified by a cherry picker, black Ranchero and Alcoa Aluminum wheel in the front.

Based on that information, Redmond police went to Indian Avenue and found a black Camaro and a cherry picker in front of 1548 S.W. Indian Avenue. They obtained the license numbers of the vehicles parked near the house, one of which was a flatbed pickup truck registered to a Wendy Wray of Crooked River Ranch. They learned that Wray was the girlfriend of defendant Gralla (referred to as Ed in the phone call), who was suspected of being a supplier in some narcotics cases under police investigation at that time.

After verifying the above, an officer returned to the Indian Avenue house about 3:00 a.m. On the way, he saw a Suzuki like the one described by the informant. It was registered to Cheryl Sage of Coburg, a town just north of Eugene. Another officer later saw the Suzuki parked in the lot of a

Redmond bank; a person was at the ATM teller. The windows of the Suzuki were so heavily tinted that it was almost impossible to see inside the car, but the officer thought there were three occupants. The Suzuki left the bank, but the police saw it again and followed it to the house on Indian Avenue. One of the car's occupants got out of the car and went into the house. About 20 minutes later, the Suzuki left. At about 3:40 a.m., the police initiated a traffic stop, based on a violation of ORS 815.220 for having tinted windows, and because all of the information provided by the informant to that point had been accurate.

The stop involved five officers in three marked patrol units. Defendant Carston was driving the Suzuki, and defendants Arlen Sage and Cheryl Sage were passengers. According to the state's evidence at the suppression hearing, after the stop, the police saw the pistol grip of a semi-automatic pistol between the right front passenger seat and the center console. The police patted down the occupants of the car and asked Carston for permission to search for more weapons. Carston agreed. The search of the car revealed drugs and drug paraphernalia. Cheryl Sage also consented to the search of her purse, in which was found a paper bindle with one-half of a Safeway advertisement on it and the address of the Indian Avenue house. The substance in the bindle was tested and determined to be methamphetamine. According to defendants, the police began the search before requesting consent. Cheryl Sage testified that a policeman dumped the contents of her purse on the hood of the car before asking if he could search.

Later that morning, the police contacted a person at the Indian Avenue house who gave them permission to search the house. They discovered drug paraphernalia, a bindle of methamphetamine and the other half of the Safeway advertisement found in Cheryl Sage's purse. The occupant of the house told them that he had been drinking at a bar with Gralla most of the previous night and that Gralla had received a phone call, after which Gralla had asked to be taken to the house. The occupant took Gralla there, returned to the bar, and later, when the occupant returned to the Indian Street house, Gralla was gone. The occupant told the police that Gralla always had "crank" on him. The police then placed the

home at Crooked River Ranch under surveillance, and arrested Gralla there later that morning. During a search incident to Gralla's arrest, the police found a bindle of methamphetamine.

■       At the suppression hearing, an electronic technician for Deschutes County testified that a telephone conversation picked up on a scanner at the frequency of 46.730 must be from a cordless phone. The technician testified that it was common to pick up conversations from one's next-door neighbors on such phones. Carston testified that he intended his conversation on the cordless phone to be private and did not know that anyone else could be listening in.

The trial court held that the search was unlawful, because the police relied on information obtained in violation of ORS 165.540, which provides, in pertinent part:

"(1)   Except as otherwise provided in ORS 133.724 or subsections (2) to (7) of this section, no person shall:

"(a)   Obtain or attempt to obtain the whole or any part of a telecommunication or a radio communication to which such person is not a participant, by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, unless consent is given by at least one participant.

"* * * * *

"(d)   Obtain the whole or any part of a conversation, telecommunication or radio communication from any person, while knowing or having good reason to believe that such conversation, telecommunication or radio communication was initially obtained in a manner prohibited by this section.

"(e)   Use or attempt to use, or divulge to others any conversation, telecommunication or radio communication obtained by any means prohibited by this section.

"* * * * *

"(4)   The prohibitions in subsection (1)(a) of this section do not apply to the receiving or obtaining of the contents of any radio or television broadcast transmitted for the use of the general public."[1]

---

[1] ORS 165.535 provides the following definitions:

"(3) 'Radio communication' means the transmission by radio or other

The trial court rejected the state's argument that the private citizen who obtained the communication did not violate the statute because the citizen's conduct came within the exception in subsection (4). The trial court concluded that that exception did not apply, because the person transmitting the communication did not intend it for use of the general public.

In *State v. Bichsel*, 101 Or App 257, 790 P2d 1142 (1990), the defendant was convicted of violating ORS 165.540(1) after she tape recorded a police broadcast that she heard over her scanner. We addressed the exception set out in ORS 165.540(4) and whether the broadcast that the defendant heard was one "for the use of the general public." We held that the "phrase refers to an electronic transmission in which the sender has no property or privacy interest, which he sends unscrambled and to which the public has free and ready access." 101 Or App at 260.

Defendants argue that *Bichsel* does not control, because a police radio broadcast is different from a private telephone call. They contend that privacy is recognized under Article I, section 9, of the Oregon Constitution[2] and that ORS 165.540 was clearly intended to protect privacy for cordless telephone calls.

We conclude that, even though there are differences between the transmission here and the one in *Bichsel*, the communication here was "for the general use of the public" within the meaning of ORS 165.540(4). Under *Bichsel*, whether a transmission is for the "general use of the public" is not dependent on a party's intention to transmit a private

---

wireless methods of writing, signs, signals, pictures and sounds of all kinds, including all instrumentalities, facilities, equipment and services (including, among other things, the receipt, forwarding and delivering of communications) incidental to such transmission.

"(4) 'Telecommunication' means the transmission of writing, signs, signals, pictures and sounds of all kinds by aid of wire, cable or other similar connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, equipment and services (including, among other things, the receipt, forwarding and delivering of communications) incidental to such transmission."

[2] Other than asserting a general constitutional recognition of a right to privacy, defendants do not explain how the constitutional protection, which forbids certain governmental acts, *see State v. Tanner*, 304 Or 312, 745 P2d 757 (1987), applies to the interception here by a private citizen.

communication. Nor is it determined by the purpose for which the transmission is made. In *Bichsel*, the police intended the broadcast to be for police use, but had done nothing to prevent public access to the transmission, such as coding or scrambling the message. 101 Or App at 261. The same is true here. Defendants' lack of knowledge about the nature of cordless phone transmissions does not mean that the conversation was not accessible to the general public. It was, and, in using the cordless phone, defendants assumed the risk that the conversation might be overheard by a private citizen.[3] We agree with the state that the private individual's interception of the communication on a scanner did not violate any recognized privacy interest and was exempt under ORS 165.540(4).

■       If the information provided by the informant from the interception of the conversation established probable cause to believe that a drug crime had been committed, the police could search the car without a warrant if they believed that the car contained seizable items, because the car was mobile at the time of the stop. *See State v. Brown*, 301 Or 268, 721 P2d 1357 (1986). The test is whether a magistrate could issue a constitutionally sound search warrant based on the information articulated by the officers. 301 Or at 276. At the time of the stop here, the officers could have provided the information that a named informant had overheard a telephone conversation in which a drug deal was being arranged. The names of the buyer and seller were known, and the buyer was to come from Eugene in a four-door Suzuki. The informant had described a house on Indian Avenue where the deal was to take place, that the sale would be in the early hours of March 20 and the amount of drugs the buyer wanted to purchase.

From their follow-up, the police could have informed a magistrate of the address of the house on Indian Avenue, that a Suzuki registered to a Coburg owner was seen around

---

[3] Defendants suggest that 1989 legislative history shows a legislative intent to prohibit interception of cordless telephone calls. However, what is now ORS 165.540(4) was enacted in 1955. As the state points out, the 1989 amendment to ORS 165.540 proposed in House Bill 2469 would have added a specific exception for a cordless phone to conform Oregon law to federal law by permitting the *police* to intercept cordless conversations without a court order. The amendment was rejected.

3:00 a.m. at a Redmond bank and then at the house on Indian Avenue, and that one of the occupants of the car went into the house. The police also knew that a flatbed truck was parked at the Indian Avenue house and that the truck was linked to a suspected drug supplier with the same name given as the seller. Under those facts, the officers had probable cause to believe that the occupants of the Suzuki were involved in a drug purchase and had probable cause to search the car for contraband. The trial court erred in granting defendants Cheryl Sage, Arlen Sage and Carston's motions to suppress.

■ Similarly, the police had probable cause to arrest Gralla. In addition to the facts above, they had discovered the paper bindle with one-half of a Safeway advertisement in Cheryl Sage's purse, the other half of which appeared to be the advertisement found in the Indian Avenue house with other drugs and paraphernalia. They also knew that Gralla had received a phone call at a bar and asked to be taken to the Indian Avenue house and, according to the occupant of the house, that Gralla always had "crank" with him. The trial court erred in granting defendant Gralla's motion to suppress.

Reversed and remanded.