Argued and submitted October 7, affirmed December 15, 1987

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## MICHAEL DAVID LISSY,
*Petitioner on Review.*

(CC 10-84-08136; CA A35041; SC S34184)

747 P2d 345

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition was Gary D. Babcock, Public Defender, Salem.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for respondent on review. With her were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

JONES, J.

**JONES, J.**

Defendant appealed his conviction for aggravated murder to the Court of Appeals, assigning as error the trial court's denial of his motion to suppress certain recorded telephone conversations between defendant and others and the recorded out-of-court statements of a co-conspirator, David Wilson. The Court of Appeals affirmed defendant's conviction. *State v. Lissy,* 85 Or App 484, 737 P2d 617 (1987). We affirm the decision of the Court of Appeals.

Defendant relies upon two points for reversal:

"[I.] Telephone calls are wire communication. The obtaining of wire communications must be through orders that confirm [*sic*] to ORS 133.724. As this was not done in the present case, the telephone conversations should be suppressed.

"[II.] The police obtained evidence through electronic surveillance orders pursuant to ORS 133.726. Any evidence obtained by this route should be suppressed as ORS 133.726 is unconstitutional by being less restrictive than the federal standards imposed by Title III of the Omnibus Crime Control and Safe Street [*sic*] Act of 1968."

We take the facts from the Court of Appeals' opinion and defendant's brief. Defendant's wife, Kathryn Martini-Lissy, was found dead in room 305 at the Valley River Inn in Eugene on June 6, 1984. She had been strangled to death during the previous evening. There was evidence that she had been raped.

As the investigation of the murder proceeded, police suspicion began to focus on defendant. Prior to the murder, defendant frequently hired prostitutes and told one of them, Molly Griggs, that he wanted a woman strangled and raped. Later, Griggs read a newspaper account of the killing and immediately suspected defendant. She called the police and agreed to help them in their investigation. At the request of the police, she made three telephone calls to defendant, which were recorded by the police with her consent. In those calls, Griggs told defendant that she suspected he was involved in the murder and attempted to get money from him to allow her to leave town.

Another prostitute, Tina LaPlante, who had been selling sex to defendant on a regular basis, reported to the police, after consulting her attorney, that defendant told her he wanted a woman raped and murdered and offered her $500 if she could find a hit man. LaPlante agreed to look around for a killer for hire. LaPlante met David Wilson at a drug party. Wilson told her that he was willing to do the job. She arranged a meeting between defendant and Wilson. After that initial meeting, defendant told LaPlante that Wilson agreed to commit the murder for $5,000. On June 5, 1984, Wilson entered the victim's room at the Valley River Inn in Eugene, gagged her, raped her and then strangled her to death.

LaPlante was subpoenaed to testify before the grand jury. She retained an attorney and was granted immunity for her cooperation. She agreed to engage defendant and Wilson in conversations, and to allow the police to tape phone calls with defendant and give her a "wire up" for a face-to-face recorded conversation with Wilson. Defendant does not contest the voluntariness of LaPlante's consent to make the calls. She told the police that defendant had offered Wilson an additional $25,000 if he would admit to everything and say that defendant had nothing to do with it. The additional money was to come from the insurance proceeds.

On October 8, 1984, LaPlante placed a telephone call to defendant at his parent's home on the coast. The conversation was tape-recorded by the police with the consent of LaPlante. LaPlante and defendant discussed the plans to pay Wilson for taking the "fall." Defendant described how Wilson would get the $25,000 plus interest. LaPlante arranged a meeting with Wilson in Portland on October 11, 1984. During that meeting she was equipped with a "body wire," and the police were stationed in the vicinity. The police had obtained a court order from a circuit court judge for recording the conversation regarding the murder. Wilson and LaPlante discussed details of the crime. Wilson indicated he had taken the victim's necklace, credit cards, checks, etc. from the room. He described what the victim had said to him, prior to the murder. He described in graphic detail how he had murdered the victim. They discussed the arrangements for payment, and the story Wilson was to give the police to protect defendant. LaPlante agreed to arrange a meeting between Wilson and defendant to go over the details.

Wilson was arrested shortly after this conversation. LaPlante agreed to call defendant on the 12th of October. This call was also tape-recorded. She informed defendant that Wilson had been arrested. Defendant advised LaPlante to "hang tough 'cause there's always a chance in court of beating it."

Shortly thereafter, defendant was arrested. David Wilson was called during the Motion in Limine hearing, with counsel, and through his counsel asserted his Fifth Amendment right not to testify in defendant's trial.

Defendant's motion to suppress the recorded conversations between defendant and Griggs, defendant and LaPlante, and Wilson and LaPlante was denied by the trial judge, and the recordings were introduced in evidence at trial and played to the jury. Both Griggs and LaPlante testified for the state and described the circumstances of the conversations.

Defendant contended on appeal to the Court of Appeals that all of the recorded conversations should have been suppressed, because the telephone calls had been recorded without a court order and the recording of the conversation between LaPlante and Wilson was not properly authorized; he also contended that the admission of Wilson's statements contained in the recording of his conversation with LaPlante was not permissible under the Oregon Evidence Code and that their admission violated his right to confront the witnesses against him. In his petition for review to this court, defendant abandons his objections under the Oregon Evidence Code[1] and asserts two grounds for reversal set out above.

I.

Defendant argues that the police's recording of his conversations with Griggs and LaPlante and between LaPlante and Wilson violates Oregon statutory wiretap law.

---

[1] We comment that the Court of Appeals was correct in disposing of these issues.

The first question we address is whether the legislature intended ORS 133.724[2] and 165.540(1)(a)[3] to allow the

---

[2] ORS 133.724 provides:

"(1) An ex parte order for the interception of wire or oral communications may be issued by any circuit court judge upon written application made upon oath or affirmation of the individual who is the district attorney for the county in which the order is sought. The application shall include:

"(a) The name of the district attorney making the application and the authority of the district attorney to make the application;

"(b) The identity of the investigative or law enforcement officer making the application and the officer authorizing the application;

"(c) A statement demonstrating that there are reasonable grounds to believe that an individual is committing, has committed or is about to commit, a particular felony or murder, kidnapping, arson, robbery, bribery, extortion or other crime dangerous to life and punishable as a felony, or any conspiracy to commit any of the foregoing crimes;

"(d) A statement of the details, if known, of the particular crime alleged under paragraph (c) of this subsection;

"(e) A particular description of the nature and location of the facilities from which or the place where the wire or oral communication is to be intercepted, if known;

"(f) A particular description of the type of wire or oral communication sought to be intercepted;

"(g) The identity of the person, if known, suspected of committing the crime and whose wire or oral communications are to be intercepted;

"(h) A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or are likely to be too dangerous;

"(i) A statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of wire or oral communication has been first obtained, a description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

"(j) A statement as to whether any prior application has been made to intercept wire or oral communications from the same person and, if such prior application exists, a statement of the current status of that application; and

"(k) Where the application is for the extension of an existing order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

"(2) The judge may require the applicant to furnish further testimony or documentary evidence in support of the application.

"(3) Upon examination of such application and evidence the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception or wire or oral communications within the state if the judge determines on the basis of the facts submitted by the applicant that:

"(a) There is probable cause for belief that an individual is committing, has committed or is about to commit a particular crime described in paragraph (c) of subsection (1) of this section;

"(b) There is probable cause for belief that particular communications concerning that crime will be obtained through such interception;

"(c) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or are likely to be too dangerous; and

"(d) There is probable cause for belief that the facilities from which, or the place where, the wire or oral communications to be intercepted are being used, or about to be used, in connection with the commission of that crime are leased to, listed in the name of, or commonly used by the individual suspected.

"(4) Each order authorizing or approving the interception of any wire or oral communication shall specify:

"(a) The identity of the person, if known, whose communications are to be intercepted;

"(b) The nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

"(c) A particular description of the type of communication sought to be intercepted, and a statement of the particular crime to which it relates;

"(d) The identity of the agency authorized to intercept the communications and of the person authorizing the application;

"(e) The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained; and

"(f) The name of the applicant, date of issuance, and the signature and title of the issuing judge.

"(5) No order entered pursuant to this section shall authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of authorization, nor in any event longer than 30 days. Extensions of any order may be granted, but only when application for an extension is made in accordance with paragraph (k) of subsection (1) of this section and the court makes the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purpose for which it is granted and in no event for longer than 30 days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception, and must terminate upon attainment of the authorized objective, or in any event in 30 days.

"(6) Whenever an order authorizing interception is entered pursuant to this section, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require."

[3] ORS 165.540(1)(a) provides:

"Except as otherwise provided in ORS 133.724 or subsections (2) to (6) of this section, no person shall:

"(a) Obtain or attempt to obtain the whole or any part of a telecommunication or a radio communication to which such person is not a participant, by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, unless consent is given by at least one participant."

police to record telephone conversations when one party consents to the recording. Read alone, ORS 165.540(1)(a) clearly exempts as a criminal offense that which would be illegal under chapter 165. Because defendant does not contest that both Griggs and LaPlante gave consent and were participants in the taped communications, the only question before this court is whether ORS 165.540(1)(a) exempts from the restrictions of chapter 133 recorded telephone conversations where one party consents to the police's recording of the communication.

The legislature enacted statutes that set forth the procedure for obtaining court orders for conducting wiretaps under ORS chapter 133, while the exemption (with consent of one party) for taping telephone conversations is found in chapter 165. Thus, the legislature created an exception from criminal sanction under chapter 165 to acts which are otherwise illegal under that chapter, but did not enact an exception, other than by warrant, for interceptions under chapter 133.

These statutes can be read as unrelated to each other or to conflict if it is assumed that, because ORS 133.724 makes no mention of consent and makes no mention of ORS 165.540, the provisions of ORS 133.724 are to exist independent of the provisions in chapter 165. That is, there is a conflict if chapter 165 merely provides criminal sanctions and exceptions from sanctions, leaving ORS 133.724 otherwise efficacious. Simply stated, the language of the statutes does not resolve the issue before us, nor does prior caselaw interpreting these statutes.

In *State v. Underwood,* 293 Or 389, 648 P2d 847 (1982), this court interpreted these statutes and allowed evidence of a police officer's taped conversation with a defendant. The issue in *Underwood* was:

"whether an undercover police officer's recording of a telephone conversation between himself and a suspect constitutes an interception which is subject to suppression because it was not obtained under court order. The state contends that the various provisions relating to interception of communications, codified in Chapters 133, 165 and 41, which were passed as parts of the same act, must be read together to determine what constitutes an 'unlawful interception' subject to suppression for failure to obtain a court order. Since parties are exempt from criminal liability, the state's position is that communications to which an officer is a party are not

'unlawful interceptions,' and need not be authorized by court order. Defendant contends that the provisions of ORS Chapter 133 concerning interception of communications must themselves be read as a whole, and that those provisions conflict unless party communications are subject to suppression if obtained without a court order. * * *" 293 Or at 391 (footnote omitted).

This court held that no interception occurred, finding that a reading of the interception statutes as a whole makes it clear that no interception occurs when one party records a telephone communication.

Thus, this court has interpreted these wiretap statutes as inapplicable to a conversation between a police officer and a defendant. But *Underwood* does not answer the further question of the legality of recording a conversation between a consenting third party and a defendant when the police are listening and recording the conversation. *Dictum* in *Underwood* would indicate that such a procedure would be an interception:

"Our result is supported by the following interpretation of the term 'interception' in *Billeci v. United States,* 87 App DC 274, 184 F2d 394, 24 ALR 2d 881 (1950):

'We think that interception of a phone call necessarily involves the idea that a speaker thinks he is talking to one person whereas in fact a third person is listening.' " 293 Or at 393.

We assume that the recorded conversations in this case falls within the prohibitions of ORS 133.724 *et seq.* Because the statutory language of ORS chapter 133 or 165 does not resolve the issue before us, we must turn to the legislative history of those statutes to determine if the exemptions in ORS 165.540 are applicable to chapter 133 and allow the police's recording of conversations between two non-police parties where the police have obtained the consent of one of the parties.

ORS 165.540(1)(a) remains in its originally enacted form. The legislative history supports the conclusion that ORS 165.540(1)(a) was intended to allow anyone, including a police officer, to tape record a telephone conversation, if one party to the telephone conversation consents.

A review of the legislative history shows that when

the legislature adopted the prohibitions contained in ORS 165.540, the intent was to curtail wiretapping, except under limited circumstances, but not to prohibit recording telephone conversations with one-party consent. In other words, the legislature intended to exempt taping or obtaining telephone conversations by third parties where one party consents from the prohibited activity described in ORS chapters 133 and 165.

To demonstrate the legislative intent of this state's wiretap statutes to permit recording telephone conversations with one-party consent without a warrant, we start with the legislature's first effort and bring the statutes to their present form. In 1955, Senate Bill 165 was introduced in the Oregon legislature and subsequently passed in amended form. In its unamended form the bill prohibited a person from obtaining a telephone conversation when the person was not a participant in the conversation. The proponents of the bill were concerned about the increasing use of wiretaps, and the bill was intended to stop the practice by making it a criminal offense. After debate about the feasibility of a blanket prohibition, amendments were proposed which would allow a wiretap with a court order, and the obtaining of a telecommunication when "consent is given by at least one participant." (First Senate Amendments to SB 165.) The consent language used above is the language that is presently in the statute. This change was made after testimony concerning many problems with the bill, but no specific reference was made to the reason for the consent provision.

The procedures for obtaining a court-ordered wiretap were originally part of ORS 141.720 (later renumbered 133.725, now 133.724). The combined effect of ORS 133.724 and 165.540(1)(a) made it a crime to wiretap without a court order, but specifically excluded the obtaining of telephone conversations, with one-party consent, from the criminal provisions.

The 1959 legislature expanded the activity made illegal under ORS 165.540 to include tape recording of face-to-face conversations. The changes were originally contained in Senate Bill 215. In its first form, the bill proposed amending ORS 165.540(1)(a) to state that a person could not record a telecommunication unless "express" consent was given by "all

participants." During the testimony on the bill, Senator Corbett questioned why the term "all participants" was stricken from SB 215 and why in the amendment only one participant need consent. One reason given for allowing one-party consent to remain in ORS 165.540(1)(a) was to continue to permit the use of that procedure in criminal investigations. Alexander Brown, City Attorney of Portland, gave the example of a police officer listening in on ransom calls in a kidnapping case, as a reason why the one-party consent exception to the prohibition on listening to a telephone conversation was necessary. Minutes, Senate Judiciary Committee (April 16, 1959).

Senate Bill 215 subsequently was replaced by SB 531, which deleted the proposed changes to ORS 165.540(1)(a) and left the exception for one-person consent of telephone tape recording intact. Senate Bill 531 did incorporate the language from SB 215 concerning face-to-face recordation of conversations, including the requirement that all participants consent. This became ORS 165.540(1)(c),[4] and is the language of the present statute.

In 1961, the legislature allowed an exception to the face-to-face recording, to permit the police to use body wires in investigation of drug cases. Or Laws 1961, ch 460, § 1. No change was made or proposed to the consent provisions in ORS 165.540(1)(a).

The 1979 legislature made some major changes to Oregon's wiretap statutes to bring them into compliance with federal law. The legislation was proposed after an interim committee studied the problem. The committee discussed the inconsistency between ORS 165.540(1)(a) and (c), stating:

"Under ORS 165.540(1)(a), interception or recording of either a telecommunication or radio communication requires the consent of only one of the parties to the communication.

---

[4] ORS 165.540(1)(c) provides:

"Except as otherwise provided in ORS 133.724 or subsections (2) to (6) of this section, no person shall:

"* * * * *

"(c) Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if all participants in the conversation are not specifically informed that their conversation is being obtained."

Under ORS 165.540(1)(c), however, before a face-to-face conversation can be intercepted or recorded *all* participants must be 'specifically informed that their conversation is being obtained.' This latter prohibition on recording of face-to-face conversations means that a person who tape records a public meeting, public speech or classroom lecture without 'specifically informing' all participants that the discussion is being taped is guilty of a Class C felony." Interim Committee Report, pp 32-33 (emphasis added).

To resolve the problem presented by this inconsistency, the committee proposed that face-to-face tape recording be allowed with the consent of one person. This was originally part of Senate Bills 1 and 484. However, the Judiciary Committee dropped this part of the bill, because it was too controversial. Minutes, Hearing Senate Judiciary Committee (June 19, 1979 - Statement of Ms. Godwin); Minutes, House Judiciary Committee (June 30, 1979 - Statement of Mr. Kelly). Senate Bill 484 passed in amended form with many changes to the procedures for obtaining wiretapping orders, but retained ORS 165.540(1)(a) and (c) without change.

In sum, the legislature chose not to allow recordation of face-to-face conversations with one person's consent, but the legislature did not restrict the taping or recording of telephone conversations by anyone when one party consents.

In 1983, the legislature reviewed the recordation of conversations, enlarged the crimes for which the police could record face-to-face conversations to all felonies, and included a requirement that the police first get a court order. These changes are now codified in ORS 165.540(5)(a)[5] and 133.726.[6]

---

[5] ORS 165.540(5)(a) is set forth in section II of the text, 304 Or at 468.

[6] ORS 133.726 provides:

"(1) An ex parte order for the obtaining of any conversation in any county of this state under ORS 165.540(5)(a) may be issued by any judge as defined in ORS 133.525 upon written application made upon oath or affirmation of the district attorney for the county in which the order is sought or upon the oath or affirmation of any peace officer. The application shall include:

"(a) The name of the applicant and the applicant's authority to make the application;

"(b) A statement demonstrating that there is reasonable cause to believe that a person whose conversation is to be obtained is engaged in committing or has committed a particular felony and that the obtaining of the conversation will yield evidence thereof; and

"(c) The identity of the person, if known, suspected of committing the crime

Again, the provisions required all participants to consent to recording face-to-face conversations unless there is a court order to allow otherwise, but they left recording one-party consent telephone conversations unchanged.

From the above, we conclude that the police listening with Griggs' and LaPlante's consent to the telephone communications between Griggs and defendant and between LaPlante and defendant was not in violation of state statute.

## II.

■ We now address the issue of the face-to-face wire recorded conversation between LaPlante and Wilson.

Defendant contends that the statements of Wilson that were made in his conversation with LaPlante and recorded by her should have been suppressed, because the court order allowing the recording of that conversation was obtained under ORS 133.726 and that statute is unconstitutional by being less restrictive than the federal standards imposed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968. ORS 133.726 requires a court order "for the obtaining of any conversation * * * under ORS 165.540(5)(a)." Defendant's argument is that the order should

---

and whose conversation is to be obtained.

"(2) The judge may require the applicant to furnish further testimony or documentary evidence in support of the application.

"(3) Upon examination of the application and evidence, the judge may enter an ex parte order, as requested or as modified, authorizing or approving obtaining of conversations within the state if the judge determines on the basis of the facts submitted by the applicant that:

"(a) There is reasonable cause to believe that a person is engaged in committing or has committed a particular felony; and

"(b) There is reasonable cause to believe that conversations to be obtained will contain evidence concerning that crime.

"(4) An order authorizing or approving the obtaining of conversations under ORS 165.540(5)(a) shall specify:

"(a) The identity of the person, if known, whose conversation is to be obtained;

"(b) A statement of the particular crime to which the conversation is expected to relate;

"(c) The agency authorized under the order to obtain the conversation;

"(d) The name and office of the applicant and the signature and title of the issuing judge; and

"(e) A period of time after which the order shall expire."

have complied with the stricter requirements of ORS 133.724 in order to comply with the federal law. We agree with the Court of Appeals that even if he is correct in that contention, the federal law does not require a court order when one of the participants consents. Section 2511 of the federal statute contains a number of exceptions, including:

> "*It shall not be unlawful under this chapter* for a person acting under color of law to intercept a wire or oral communication, *where such person is a party to the communication or one of the parties to the communication has given prior consent* to such interception." 18 USC § 2511(2)(c) (1982) (emphasis added).

ORS 165.540(5)(a) and 133.726 provide a stricter, not less restrictive, standard for recording face-to-face conversations. The Oregon statutes require a court order unless all parties consent, the federal statutes do not when one of the parties consents. ORS 165.540(5)(a) provides:

> "The prohibitions in paragraph (c) of subsection (1) of this section[7] do not apply to a law enforcement officer who uses a listening or recording device, machine or apparatus *pursuant to a court order* issued under ORS 133.726 to obtain a conversation between the officer or someone under direct supervision of the officer and a person whom the officer has reasonable cause to believe has committed, or is engaged in committing, a felony, so long as any officer who records a conversation does not intentionally fail to record and preserve the conversation in its entirety. However, the court order shall not be necessary under this paragraph if exigent circumstances make it unreasonable to obtain the order." (Emphasis added.)

The police had obtained a circuit court order under ORS 133.726 to record this conversation between LaPlante and Wilson. Accordingly, the taped conversation between LaPlante and Wilson was not suppressible for the reasons argued by defendant.

The decisions of the Court of Appeals and the circuit court are affirmed.

---

[7] *See* note 4, *ante.*