Argued and submitted March 23, resubmitted en banc August 17, reversed
October 26, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHANE MICHAEL NEFF,
*Defendant-Appellant.*

Lane County Circuit Court
210825614; A141960

265 P3d 62

Bronson D. James argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Linda Wicks, Assistant Attorney General.

Before Brewer, Chief Judge, and Haselton, Armstrong, Wollheim, Schuman, Ortega, Sercombe, Nakamoto, and Edmonds, Judges.

BREWER, C. J.

Haselton, J., dissenting.

Edmonds, S. J., dissenting.

**BREWER, C. J.**

Defendant appeals his conviction for unlawfully obtaining the contents of a communication, ORS 165.540(1)(c), assigning error to the trial court's denial of his motion for a judgment of acquittal. According to defendant, the statute proscribes obtaining a conversation only when not all of the participants have been specifically informed that the conversation is being obtained. It follows, defendant reasons, that he did not commit a crime by using his cell phone to record his conversation with a police officer during a traffic stop after the officer already had informed defendant that the conversation was being recorded. We reverse.

Defendant was convicted after a bench trial. We state the facts in the light most favorable to the state to determine whether a rational trier of fact, drawing reasonable inferences, could have found that the state proved the elements of the charged offense beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994). The trial court issued a letter opinion setting out its findings of fact and conclusions of law, and we take the facts from that opinion and our review of the record.

"On November 4, 2008, the defendant was pulled over by Officer Ou of the Eugene Police Department * * *[.] Officer Ou informed the defendant that the encounter was being recorded. However, unbeknownst to Officer Ou, the defendant was also recording the encounter by holding a recording device near the inside of the driver's car door but underneath the window, where the recording device was concealed. The defendant never informed the Officer that he was recording the encounter. When Officer Ou later realized that the defendant was recording the proceeding, the defendant was arrested and charged with obtaining contents of communication under ORS 165.540(1)(c)."

ORS 165.540(1)(c) provides, in part:

"Except as otherwise provided in ORS 133.724 or 133.726 or subsections (2) to (7) of this section, a person may not:

"* * * * *

"(c)   Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance,

machine or apparatus, whether electrical, mechanical, manual or otherwise, if not all participants in the conversation are specifically informed that their conversation is being obtained."

At trial, the parties offered competing interpretations of the statute. Defendant argued:

"[N]otice is notice and the statute does not require specific people to give the notice. This conversation was being recorded because specific warning had been given, and the simple fact that it was being recorded twice, I don't see that the statute requires further notification."

According to defendant, "there is no secret that it was being not only recorded in audio, but also in video. I suggest that to interpret the statute to require that the defendant also say, 'this conversation is being recorded,' serves no purpose." The prosecutor responded that the "legislative intent is to prohibit surreptitious tape recording and that is what was going on here. The defendant never informed Officer Ou that he was obtaining their conversation, and that's in clear violation of the statute without giving it a twisted or tortured reading."

The trial court ultimately took the case under advisement, and later concluded in its letter opinion:

"The legislature clearly intended to require persons recording the conversations of others to give an unequivocal warning to that effect. * * * A person who records a conversation controls what is being recorded; they control when the recording begins and ends. If another person is secretly recording the same conversation, that individual does not necessarily begin and end the recording at the same time. Therefore, portions of the conversation may be recorded without the knowledge of the party providing the notice. This lack of notice could only be cured by a separate notice given by the party making the recording. Accordingly, to comply with the legislative intent of full disclosure, this court finds that the defendant should have specifically informed Officer Ou that he was also recording the conversation and may not rely on the Officer's notice of recording."

The court convicted defendant of violating ORS 165.540(1)(c) and imposed a $100 fine. This appeal followed.

The parties renew their arguments on appeal. Defendant reasons that,

> "the statute in question requires that those being recorded be warned, or put on notice, of the recording. The statute does not require multiple warnings when multiple people record a single event, nor does it require multiple warnings when multiple devices are used."

Defendant further argues that "Officer Ou's own act of announcing that the encounter was being recorded was sufficient notice for all involved, including Officer Ou himself[.]" Moreover, according to defendant, adopting the state's interpretation of ORS 165.540(1)(c)—that is, that every participant in a conversation must be separately informed that a recording is being made—would not only be "unwieldy" but would also render Ou's actions illegal because Ou only informed defendant, and not defendant's passenger, that the encounter was being recorded.

The state replies that ORS 165.540(1)(c) required defendant to "specifically inform the participants that he was recording the conversation" because "the statute requires specific notification to participants in conversations that the *person* is obtaining the conversation, which thereby informs the participants that the person who is obtaining the recording will possess it and may put it to future uses." (Emphasis in the original.) In the state's view, Ou's statement that the encounter was being recorded was insufficient because "specific notice regarding one recording being made does not necessarily provide specific notice regarding another recording." For instance, the state posits, different recordings can capture different sounds and may start and stop at different points. Notice of the identity of the person obtaining the conversation is critical, the state reasons, to allow "the participants to make informed choices about their participation in the conversation, based upon both the fact that the conversation is being recorded, and on *who* is recording it." (Emphasis in the original.)

Thus framed, the parties' contentions present a question of the proper interpretation of ORS 165.540(1)(c). That is a question of law, governed by the principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12,

859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Our goal is to determine the intended meaning of those statutes by examining their text in context, along with relevant legislative history and, if necessary, other aids to construction. *Id.* The parties agree that defendant and Ou participated in a conversation and that defendant, by recording their encounter with his cell phone, "obtained" the same conversation. Accordingly, the question reduces to whether Ou's statement that he was recording the conversation satisfied the requirement in subsection (1)(c) that all participants be "specifically informed" that their conversation was being obtained.

The text of the statute provides little assistance in answering that question, primarily because the legislature employed the passive voice. As noted, the statute requires that "all participants in the conversation are specifically informed that their conversation *is being obtained.*" ORS 165.540(1)(c) (emphasis added). However, the statute does not specify who must do the informing or whether every act of obtaining requires a separate act of informing. The statute instead specifies who must be informed.

Generally, where the legislature employs the passive voice with regard to an action that a statute either authorizes or requires (*e.g.*, "may be established," "shall be made"), that usage indicates an intention to avoid specifying a particular actor to whom the statute's command is directed. *See, e.g., Brentmar v. Jackson Co.*, 321 Or 481, 487, 900 P2d 1030 (1995) (phrase "may be established" did not specify the actor that could establish an Exclusive Farm Use zone "because the statute uses the passive voice of the key verb 'establish'"); *State v. Pena*, 345 Or 198, 207, 191 P3d 659 (2008) (because ORS 14.270 used the phrase "shall be made," which was "worded in the passive voice," the statute did not specify what actor or actors could move for a change of judge). However, not every use of the passive voice is so purposeful. *See State v. Serrano*, 346 Or 311, 322, 210 P3d 892 (2009) (disclaiming reliance on the use of passive voice in statutory text where use did not "necessarily reflect" which actor's intent governed confidentiality under OEC 505(1)). Because the statute's text does not conclusively inform the meaning of the statute, we turn to the statutory context.

Statutory context includes earlier-enacted statutes, but does not include later-enacted statutes, including later-enacted subsections of ORS 165.540. *Checkley v. Boyd*, 198 Or App 110, 120, 107 P3d 651, *rev den*, 338 Or 583 (2005). Here, ORS 165.540(1)(c) was enacted by the 1959 legislature in light of ORS 165.540(1)(a) and ORS 165.540(1)(b), both of which had been enacted in 1955 as part of Oregon's original wiretapping law. *See generally State v. Lissy*, 304 Or 455, 464-67, 747 P2d 345 (1987) (discussing development of Oregon wiretapping law). In 1959, ORS 165.540 provided, in pertinent part:

"(1) Except as otherwise provided in ORS 141.270 or subsections (2), (3) and (4) of this section, no person shall:

"(a) Obtain or attempt to obtain the whole or any part of a telecommunication or a radio communication to which such person is not a participant, by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, unless consent is given by at least one participant.

"(b) Tamper with the wires, connections, boxes, fuses, circuits, lines or any other equipment or facilities of a telecommunications or radio communication company over which messages are transmitted, with the intent to obtain unlawfully the contents of a telecommunication or radio communication to which such person is not a participant.

"(c) Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if all participants in the conversation are not specifically informed that their conversation is being obtained.

"(d) Obtain the whole or any part of a conversation, telecommunication or radio communication from any person, while knowing or having good reason to believe that such conversation, telecommunication or radio communication was initially obtained in a manner prohibited by this section."

Although it is apparent that ORS 165.540(1)(c) was modeled on subsection (1)(a), subsection (1)(c) differed in two key respects. Unlike subsection (1)(a), subsection (1)(c) was

not a consent provision. And, unlike subsection (1)(c), subsection (1)(a) identifies the actor who must satisfy the exception contained in the statute: "*unless* consent is given by at least *one participant.*" (Emphasis added.) ORS 165.540(1)(b) also differed from subsection (1)(c) in that, like subsection (1)(a), it too identified the actor to whom the statute's prohibition as directed—*viz.*, "no person shall tamper with the wires * * * with the intent to obtain unlawfully the contents of a tele-communication * * * to which *such person* is not a partici-pant." (Emphasis added.) ORS 165.540(1)(d), which was enacted contemporaneously with subsection (1)(c), also iden-tified the actor to whom the statute was directed: *viz.*, "no person shall obtain * * * a conversation * * * while knowing * * * that such conversation" was unlawfully obtained.

In overview, the statutory context of subsection (1)(c) demonstrates that, when the legislature intended to identify the actor to whom the statute's command was directed, the legislature did so. Unlike the particular actors whom the legislature targeted in ORS 165.540(1)(a), (1)(b), and (1)(d), the legislature chose not to expressly designate any particular actor who must satisfy the informational requirement in ORS 165.540(1)(c). Furthermore, unlike the deliberate choice of "consent" by at least one participant in ORS 165.540(1)(a), the legislature chose not to specify the precise manner by which the obtaining of a face-to-face con-versation could be exempted from ORS 165.540(1)(c). Instead, the legislature required only that all the partici-pants be "specifically informed." We understand those choices to indicate that the primary concern underlying ORS 165.540(1)(c) was the protection of participants in conversa-tions from being recorded without their knowledge. Where, as here, all participants in a conversation know that the con-versation is being recorded, the legislature's primary concern has been satisfied.

Case law interpreting ORS 165.540(1)(c) sheds little light on the question presented by this case because no case has presented a situation where multiple persons "obtained" the same conversation. Instead, the underlying premise in those cases is that, in the context of a single person obtaining

a conversation, the burden is on the person obtaining the conversation to "specifically inform" the participants in the conversation that their conversation is being obtained. *See, e.g.*, *State v. Jones*, 339 Or 438, 444, 121 P3d 657 (2005) (the defendant was recorded during questioning by police without being informed that the questioning was being recorded); *State v. Bichsel*, 101 Or App 257, 262, 790 P2d 1142 (1990) (holding that, by using the term "specifically informed," the legislature "clearly intended to require persons recording conversations of others to give an unequivocal warning to that effect").

Because the statutory text, context, and case law interpreting ORS 165.540(1)(c) do not conclusively resolve the tension between the parties' competing constructions, we turn to legislative history. *See PGE*, 317 Or at 611-12 (when reading text and context does not make legislative purpose clear, court looks to legislative history for clarification).[1] The text that became ORS 165.540(1)(c) was introduced in the 1959 legislature as Senate Bill 215 and was ultimately enacted as part of Senate Bill 531. *Lissy*, 304 Or at 465. No exhibits or tape recordings are listed in the records of Senate Bills 215 and 531. The only available legislative history consists of the minutes of committee hearings during which the bills were discussed. Those minutes reveal neither direct legislative consideration of the phrase "specifically informed," nor any consideration of to whom the statute was directed.

Because the legislative history of ORS 165.540(1)(c) does not assist our inquiry, it is necessary to consider applicable maxims of statutory construction. *See Gaines*, 346 Or at 171-73. One such maxim is that, "where no legislative history exists, the court will attempt to determine how the legislature would have intended the statute to be applied had it considered the issue." *PGE*, 317 Or at 612 (citing *Security State Bank v. Luebke*, 303 Or 418, 423, 737 P2d 586 (1987)). As discussed, in context, it is apparent that the legislature's concern in enacting subsection (1)(c) was to protect participants from having their conversations recorded without being

---

[1] Of course, a determination of statutory ambiguity is not a prerequisite to the consideration of legislative history. *Gaines*, 346 Or at 172.

informed that that was occurring. Consistently with that concern, we conclude that the legislature would not have intended ORS 165.540(1)(c) to criminalize defendant's conduct in this case because, here, it is uncontested that Officer Ou knew that the same conversation was being recorded: Ou himself was recording it. That defendant also recorded the conversation with his own device is immaterial.

In his dissenting opinion, Judge Haselton disagrees, reasoning that

"[e]ach act of 'obtaining' is not culpable *per se*. Rather, a person is culpable under ORS 165.540(1)(c) only if he or she '[o]btain[s] or attempt[s] to obtain' the conversation *and* 'not all participants in the conversation are specifically informed that their conversation *is being obtained*.' (Emphasis added.) * * *

"The referent for 'is being obtained' as used in that final phrase of subsection (1)(c) is '[o]btain' as used in the first phrase. That is, 'is being obtained' for purposes of the requisite notice (or lack of notice) connotes, unambiguously, each, separate act of 'obtaining.' Thus, if an individual obtains (or attempts to obtain) a conversation and each participant is not 'specifically informed' of *that* separate act of obtaining, that person violates ORS 165.540(1)(c). That is so regardless of whether all participants have been informed that some other individual is obtaining the conversation."

246 Or App at 199-200 (Haselton, J., dissenting) (emphasis and brackets in original).

Judge Haselton concludes that the participants must be notified of each particular act of obtaining, and he finds support for that conclusion in the legislature's use of the term "specifically." 246 Or App at 200 (Haselton, J., dissenting). However, in our view, the dissent reads too much into that word. The operative phrase proscribes certain conduct "if not all participants in the conversation are specifically informed that their conversation is being obtained." On its face, that phrase requires only that the participants be specifically informed that their conversation *is being obtained*;

nothing in the text requires that the participants be separately informed of each separate, simultaneous act of obtaining. Moreover, implicit in Judge Haselton's construction of the word "specifically" is a requirement that the notice given to the participants must identify the person obtaining the conversation. However, Judge Haselton must rely on inferences to reach that conclusion, because, as explained above, nothing in the text of ORS 165.540(1)(c) evinces a legislative concern that the participants in the conversation know the identity of the person, or persons, obtaining a conversation. In short, we do not share Judge Haselton's view that his proposed construction is unambiguously compelled by the statutory text in context.

Despite his conclusion that the statute is unambiguous, Judge Haselton suggests that, if it were necessary to reach the third level of construction, a different legislative concern motivated its enactment. He asserts that,

"given ordinary social/group dynamics, a participant's knowledge of *who* is recording a conversation may well be extremely important in determining what he or she says (or does not say)—or how something is said. If I am in a potentially contentious meeting and know that my best friend is recording the discussion, I may very well conduct myself differently than if I know that my worst enemy is recording the discussion to be shared with others (potentially concurrently via social media). Thus, notification of each act of recording is not just material, but central, to the policies that the legislature, presumably, sought to promote through the 'specifically informed' proviso of ORS 165.540(1)(c)."

246 Or App at 201 n 2 (Haselton, J., dissenting) (emphasis in original).

We are ultimately unconvinced by Judge Haselton's premise, which is consistent with the state's posited concerns about the possibilities that, if all participants who obtain a conversation fail to inform the other participants that they are doing so, there may be different starting and stopping points, different recording qualities, or, most interestingly, that participants will be unable to "make informed choices about their participation in the conversation, based upon

both the fact that the conversation is being recorded, and on *who* is recording it." The state elaborates:

> "For example, a person may be happy to have her personal assistant record her throughout the day, but would limit or carefully edit her words if she knew that a business adversary, or a gossip blogger, was also recording her conversations."

With respect, that hypothetical—which hints at monologues and eavesdropping—has nothing to do with the problem at hand, which involves a specific antecedent notification that a *conversation*—that is, "the transmission between two or more persons of an oral communication"—was being obtained by one of the participants.[2] The state proffers no explanation, and we perceive none, why a participant in a conversation who has specifically informed the other participants that he or she is obtaining a record of the conversation would have a *legitimate* motive to change his or her mind about participating in the conversation merely because another participant also is obtaining a record of the same conversation. In this case, the best protection that Ou had in guarding against the possible inaccuracy of an additional record of his conversation with defendant was to do precisely what he told defendant he would do—that is, obtain his own recording of the conversation.

A different set of hypotheticals illustrates the troubling implications of the dissenting judges' and the state's construction. Suppose that a conference room is fitted with an automated, voice-activated recording device that is not visible to anyone in the room. However, there is a large sign in the room, which reads: "Warning: Your Conversation is Being Obtained." If X and Y enter the room and see the sign, the dissenting judges' and the state's construction compels the conclusion that neither X nor Y has been specifically informed that their conversation is being obtained because the sign does not disclose the identity of the person obtaining

---

[2] This case does not involve a circumstance where a conversation is obtained by a person who is not a participant in the conversation. Nor does this case involve a circumstance where one participant in a conversation specifically informed the other participant(s) that only a portion of their conversation was being obtained and another participant then surreptitiously obtained additional portions of the conversation.

the conversation. It follows, under the dissenting judges' and the state's construction that, despite the sign's warning, the person who obtained the conversation is guilty of a crime. Moreover, under that construction, if a third person, Q, enters the room at the same time as X and Y and obtains their conversation with a cell phone, Q will have violated ORS 165.540(1)(c) despite the fact that X and Y have both seen the sign. In our view, both of those outcomes are inconsistent with the legislature's apparent primary concern in enacting ORS 165.540(1)(c), because the sign in the conference room ensures that the participants in the conversation have been informed that their conversation is being obtained.

In short, we conclude that Ou's own act of informing defendant that their conversation was being recorded was sufficient to satisfy the requirement of ORS 165.540(1)(c) that all participants to the conversation be "specifically informed" that the conversation was being obtained.[3] Accordingly, the trial court erred in denying defendant's motion for a judgment of acquittal.

Reversed.

**HASELTON, J.,** dissenting.

Defendant's—and the majority's—position rests on the irreducible premise that, in a circumstance in which multiple persons are recording/"obtaining" a conversation, if someone gives notice to all participants that one person is recording the conversation, that is sufficient to insulate all

---

[3] In his separate dissent, Judge Edmonds conceives of the statute as protecting each participant's "side" of a conversation and reasons that Ou's notification satisfied the statute as to defendant's side of the conversation, and defendant's failure to notify Ou violated the statute with regard to Ou's side of the conversation. 246 Or App at 202 (Edmonds, S. J., dissenting). We do not share that conception. ORS 165.540(1)(c) does not address sides or segments of conversations, but rather a single, entire, conversation; that is, the statute refers to "their conversation" when identifying the conversation that the participants must be specifically informed is being obtained. The statutory text does not support the division of the conversation into halves (in the case of two participants) and also lends no support to the notion that one side of a conversation can be protected by one participant's notice that the conversation is being obtained while the other side of the conversation is left unprotected if the other participant, who is also obtaining the conversation, does not separately give notice. The upshot of this discussion, however, is that Judge Edmonds's additional conception of the meaning of the statute further supports the conclusion that it is susceptible to multiple constructions and, thus, is ambiguous.

other recording parties from culpability under ORS 165.540(1)(c), even if one or more of the participants is unaware that the conversation is being recorded by those other persons. That premise is irreconcilable with the statute's unambiguous language in context. Accordingly, I dissent.

ORS 165.540 provides, in pertinent part:

"(1)   Except as otherwise provided in ORS 133.724 or 133.726 or subsections (2) to (7) of this section, a person may not:

"* * * * *

"(c)   Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if not all participants in the conversation are specifically informed that their conversation is being obtained."

Thus, as pertinent here, the elements of ORS 165.540(1)(c) that the state must prove are that defendant (1) obtained the conversation and (2) did so without the requisite notice. Defendant acknowledges that the first element has been established. Accordingly, the issue narrows to whether the requisite notice was given.

The statute's initial operative phrase, "*a person* may not * * * [o]btain or attempt to obtain" (emphasis added), refers, unambiguously, to *each, individual* act of "obtaining"/recording a conversation. That is, if two people (or 50) are separately recording the same conversation, each is, potentially, subject to conviction under ORS 165.540(1)(c). "Obtain," thus, unambiguously connotes each individual act of recording.

However, each act of "obtaining" is not culpable *per se*. Rather, a person is culpable under ORS 165.540(1)(c) only if he or she "[o]btain[s] or attempt[s] to obtain" the conversation *and* "not all participants in the conversation are specifically informed that their conversation *is being obtained*." (Emphasis added.) As defendant correctly notes, ORS 165.540(1)(c) does not provide *who* must provide the notice or even how notice is to be given. Nevertheless, the *content* of the requisite notice, as prescribed in the final

phrase of subsection (1)(c), is unambiguous despite the use of the passive voice, which the majority emphasizes. *See* 246 Or App at 191.

The referent for "is being obtained" as used in that final phrase of subsection (1)(c) is "[o]btain" as used in the first phrase. That is, "is being obtained" for purposes of the requisite notice (or lack of notice) connotes, unambiguously, each, separate act of "obtaining." Thus, if an individual obtains (or attempts to obtain) a conversation and each participant is not "specifically informed" of *that* separate act of obtaining, that person violates ORS 165.540(1)(c). That is so regardless of whether all participants have been informed that some other individual is obtaining the conversation.

That conclusion is compelled by the fundamental canon of textual construction that a term—here, "[o]btain" in the first phrase and "is being obtained" in the concluding phrase—is presumptively to be given the same meaning within the same statute. *See, e.g., PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) ("[U]se of the same term throughout a statute indicates that the term has the same meaning throughout the statute[.]"); *Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 518, 238 P3d 395 (2010) ("It is a longstanding principle of statutory construction that words may be assumed to be used consistently throughout a statute."). That construction further comports with the statute's requisite that all participants be *"specifically* informed" (emphasis added)—*viz.,* that they be given notice of the "specific," particular act of recording.[1]

---

[1] The majority's contrary construction of "specifically informed" refers, in part, to ORS 165.540(1)(a) as context for construing ORS 165.540(1)(c). *See* 246 Or App at 192-93. That reliance is misplaced for two interrelated reasons. First, ORS 165.540(1)(a) and ORS 165.540(1)(c) address qualitatively different circumstances—the former pertains to the obtaining of telecommunications or radio communications by nonparticipants to those communications (*e.g.,* "wire-tapping"), and the latter pertains to the obtaining of face-to-face conversations by either participants or third persons.

Second, culpability under each of the two provisions depends on a condition (or exception) that does not apply to the other. Specifically, obtaining by a nonparticipant violates ORS 165.540(1)(a) "unless *consent* is given by at least one participant" (emphasis added), but obtaining by any person violates ORS 165.540(1)(c) unless all participants have been notified of the obtaining—"if not all participants in the conversation are *specifically informed* that their conversation is being

The application of ORS 165.540(1)(c) in this case is straightforward. Defendant recorded his conversations with Ou without Ou being informed that defendant was doing so. Thus, regardless of Ou's obtaining of the conversation—which did satisfy the statute's particularized notice requirement—defendant's conduct did not. Accordingly, defendant's conviction under ORS 165.540(1)(c) must be affirmed.[2]

Nakamoto, J., joins in this dissent.

**EDMONDS, S. J.,** dissenting.

I generally agree with Judge Haselton's interpretation of ORS 165.540 except as expressed below.

The statute is composed of two requirements that the state must prove in order to obtain a conviction under the statute that are discrete and independent of each other, unlike other criminal statutes that often focus on a series of circumstances that are attendant to or connected with the actions of the criminal actor. First, under ORS 165.540, the state must prove that the person charged with violating the

___

obtained" (emphasis added). Thus, even if all participants to a telephonic or radio communication under subsection (1)(a) were notified/"specifically informed" that a nonparticipant was obtaining their communication, he or she would still be culpable under subsection (1)(a) unless one or more of those participants consented to that obtaining; conversely, even if a person were to secure the consent of one or more, but not all, of the participants in a conversation under subsection (1)(c) to the obtaining of the conversation, he or she would still be liable under subsection (1)(c) unless all of the participants had been "specifically informed" of that obtaining.

Given those qualitative circumstantial and functional differences, ORS 165.540(1)(a) simply does not provide *useful* context (even in an off-hand "The Legislature could have done it differently * * *" fashion) for construing the requisite notification under ORS 165.540(1)(c).

[2] I would reach the same result even if the statute were ambiguous and we were somehow required to resort to the third-level maxim by which we "attempt to determine how the legislature would have intended the statute to be applied had it considered the issue." *PGE*, 317 Or at 612.

Any default to that maxim is innately disquieting, effectively reconstituting the court as a mini-legislature. Nevertheless (as a hypothetical reasonable legislator), given ordinary social/group dynamics, a participant's knowledge of *who* is recording a conversation may well be extremely important in determining what he or she says (or does not say)—or how something is said. If I am in a potentially contentious meeting and know that my best friend is recording the discussion, I may very well conduct myself differently than if I know that my worst enemy is recording the discussion to be shared with others (potentially concurrently via social media). Thus, notification of each act of recording is not just material, but central, to the policies that the legislature, presumably, sought to promote through the "specifically informed" proviso of ORS 165.540(1)(c).

statute obtained the conversation of another participant in the conversation. Second, the state must prove that the person who is the subject of the protection of the statute was not informed that his or her conversation is being obtained at the time that it was being obtained. How these requirements relate or correspond to each other is at the core of the dispute between the majority's and the dissents' interpretations of the statute.

The statute does not require that the defendant or anyone else must provide the requisite notice to the person whose conversation is being obtained at the time that it is being obtained. Under the statute's language, the content of the notice determines the reach of the statute. Thus, the state is able to obtain a conviction under the statute by proving a negative, i.e., that the person whose conversation was being obtained by a specific person (the defendant) was not specifically informed of that fact by any manner. Although the first requirement focuses on the actions of the person who is charged under the statute, the second requirement focuses on the state of circumstances or lack of awareness of the person whose conversations are protected under the statute. Thus understood, the statute is violated only when a person acts to obtain the conversation of another and there also exists the circumstance that the person protected under the statute has not been informed in some manner that his or her conversation is being obtained by the actor referred to in the first requirement of the statute.

Consequently, under circumstances where a person enters into a conversation and the participants in the conversation are advised generically that "all conversations are subject to being recorded," no violation could be proved by the state under the statute because each person has been specifically informed of the fact that his or her conversation is being obtained by whoever exercises control over the recording of the conversation. However, if that conversation is obtained by someone else not within the contemplation of the generic notice to the participants, then the statute's requirements apply to that person separately.

In this case, ORS 165.540 applies separately to the actions of both persons. The officer gave notice under the

statute as it requires, and, therefore, no violation occurred. However, defendant did not give the notice required by the statute. Defendant is in violation of the statute because the officer's notice that the officer was obtaining his conversation did not inform the officer that his conversation was being obtained by defendant.

It follows that the trial court did not err, and, accordingly, I dissent.